**THE ESTATE OF THE UNBORN CHILD OF
JENNIFER JAWSON; and
JENNIFER JAWSON**;

        Plaintiffs,

          **Case No:**

   v.

**MILWAUKEE COUNTY, a municipal corporation,
901 N. 9th Street, Room 306
Milwaukee, WI 53223;**
        and,
**DAVID A. CLARKE JR**.; **INSPECTOR RICHARD
SCHMIDT**; **MAJOR NANCY EVANS; DEPUTY
INSPECTOR KEVIN NYKLEWICZ; JANET BORUCKI;
WILLIAM DUCKETT; AMIKA AVERY**
        and,
**JOHN DOES 1-10**
821 W. State Street
Milwaukee, WI 53233;
        and,
**WISCONSIN COUNTY MUTUAL INSURANCE
CORPORATION**;
c/o Registered Agent, David Bisek
Aegis Corporation
18850 W. Capitol Drive
Brookfield, WI 53045
        and,
**ARMOR CORRECTIONAL HEALTH SERVICES, INC**.;
and **MEDICAL DIRECTOR DR. KAREN HORTON;
DIRECTOR OF NURSING R.N. COURTNEY
HOLIFIELD; JOHN DOES 11-20; N.P. KATHERINE
MEINE; R.N. FREDERICK PORLUCAS; R.N. JACKIE
PITTERLE; R.N. SHEREE YOUNG; L.P.N. LYDIA
WILLIAMS; L.P.N. ALECIA SANTIAGO; L.P.N.
BONNIE LEIGH; L.P.N. CARLA BEDNEAU; L.P.N.
JA-KAL WALKER;**
c/o Registered Agent, C T Corporation System,
8020 Excelsior Drive, Ste. 200
Madison, WI 53717
        and,
**EVANSTON INSURANCE COMPANY**;
125 S Webster St.
Madison, WI 53703-3474.
        and,

**WISCONSIN HEALTH CARE LIABIITY INSURANCE PLAN;**
125 S Webster St.
Madison, WI 53703-3474
    and,
**INJURED PATIENTS AND FAMILIES COMPENSATION FUND**;
125 Webster St.
Madison, WI 53703.
        Defendants.

## COMPLAINT

NOW COMES the above-named Plaintiffs, Jennifer Jawson, and the Estate of the Unborn Child of Jennifer Jawson, and as for their claims for relief against the above-named Defendants, allege and shows the Court as follows:

## I.   INTRODUCTION

1.     This case involves Milwaukee County ("MC"), the Milwaukee County Sheriff's Office ("MCSO"), Armor Correctional Health Services, Inc. ("Armor Correctional"), and the individually named Defendants' methods of infringing on and violating the Constitutional, Civil, and/or Statutory Rights of Jennifer Jawson ("Jawson"), and the Estate of the Unborn Child of Jennifer Jawson (the "Unborn Child" or "Jawson's Baby" ) causing Jawson and her Unborn Child to suffer damages, injures and ultimately the Unborn Child's death. While under the Defendants' care and custody, Jawson and the Unborn Child were subjected to inadequate and unconstitutional health care which involved the wanton and unnecessary infliction of pain.

2.     Jawson was brought into the Milwaukee County Justice Facility ("CJF") on December 1, 2016, she was approximately 35 weeks pregnant with the Unborn Child and said pregnancy was progressing without complications. Approximately 11 days later, the Unborn Child did not exhibit a heartbeat and was pronounced dead. As a result of the Defendants' reckless

disregard and deliberate indifference, Jawson and her Unborn Child unnecessarily suffered and the Unborn Child ultimately lost his life.

3.      Dr. Ronald Shanksy ("Shansky"), is a court appointed medical monitor who was appointed to monitor MC's compliance with the terms of a consent decree entered into in Milwaukee County Case No. 1996-CV-1835.  Despite 23 years of monitoring, the Consent Decree remains in full force and effect as the CJF continues to suffer from significant subhuman conditions and constitutionally deficit lack of medical care for inmates housed therein.

4.      Plaintiffs bring this action under the United States Constitution, particularly under the provisions of the Fourteenth and Eighth Amendments; Title 42 of the United States Code Sections 1983 and 1985; Articles I, Sections One and Six of the Wisconsin Constitution and common law; and pursuant to Wis. Stat. §§ 895.03.

## II.  JURISDICTION

5.      That this Court has jurisdiction pursuant to 28 U.S.C. § 1331 because this action arises under the United States Constitution and Laws of the United States, and pursuant to 28 U.S.C. § 1343(a)(3) because this action seeks to redress the deprivation, under color of state law, of Plaintiffs' civil rights.

6.      That this Court has supplemental jurisdiction over all state law claims which arise out of the same facts common to Plaintiffs' federal claims pursuant to 28 U.S.C. § 1367.

7.      That the amount in controversy exceeds Seventy-Five Thousand ($75,000) Dollars, exclusive of costs, interests, and attorneys' fees.

## III. VENUE

8.      Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) because most Defendants reside in this district and because a substantial part of the events and omissions giving rise to Plaintiffs' claims occurred within this district.

3

## IV. THE PARTIES

9.     Plaintiff, Jennifer Jawson, is an adult citizen of the United States and a resident of the State of Wisconsin. At all times material hereto, Jawson was an inmate residing at the Milwaukee County Justice Facility in Milwaukee County, City of Milwaukee, and entitled to all rights, privileges, and immunities accorded all residents of Milwaukee County and the State of Wisconsin, and as a citizen of the United States. At all material times hereto, Jawson was pregnant with a healthy baby while being involuntarily detained at the Justice Facility under the direct custody, control and supervision of the Defendants.

10.     Plaintiff, the Estate of the Unborn Child of Jennifer Jawson (the "Unborn Child"), represents the decedent, the Unborn Child, whose prenatal serious-acute-obvious medical needs were deliberately ignored and disregarded while the Unborn Child was in the custody and under the care/control of the MCSO, MC and Armor, all of whom the Unborn Child relied upon to provide adequate medical care.  As a result of the Defendants' deliberate indifference and blatant failure to provide Jawson any medical care, the Unborn Child died in Jawson's womb at CJF.  At all times material hereto, the Unborn Child was entitled to all rights, privileges, and immunities accorded by Wisconsin Statute and the Constitution of the United States. Plaintiffs' are in the process of opening an estate in Milwaukee County on behalf of the Unborn Child.

11.     Defendant, Former Sheriff David A. Clarke Jr. ("Clarke"), is an adult citizen of the United States and a resident of the State of Wisconsin.   At all times material hereto, Clarke was the Sheriff of the MCSO and was ultimately responsible for the health, safety, security, welfare and humane treatment of all inmates at CJF, including Jawson and the Unborn Child.  At all times material hereto, Clarke oversaw, supervised and had direct control over the management and operations of the entire MCSO, including CJF, and was responsible for the MCSO's policies and procedures, as well as training.  Further, Clarke oversaw, supervised and had direct oversight and

4

responsibility for the actions of Armor and its employees, including named Defendants Dr. Karen Horton and Courtney Holifield, as these defendants were acting under the color of state law. At all times material hereto, Defendant Clarke was intimately aware of the MCSO's constitutional deficiencies and lack of compliance with the Consent Decree, as well as Medical Monitor Shansky's recommendations, but never took sufficient action to remedy the repeated and occasionally constitutional deficiencies. Clarke's deliberate disregard of the health, welfare and safety of the individuals under his supervision and control at the CJF, including Jawson and the Unborn Child, resulted in subhuman conditions where inmates' medical needs were consistently not being met. At all times material hereto, Defendant Clarke had control and authority over the MCSO and MC's contract with Defendant Armor. Clarke ignored, with deliberate indifference, CJF's lack of sufficient staff, staff's lack of sufficient training, and the CJF's lack of policy and procedure, both written and unwritten, to adequately address/access Jawson and the Unborn Child, and other inmates, in need of medical care.

12. Defendant, Richard E. Schmidt ("Schmidt"), is an adult citizen of the United States and a resident of the State of Wisconsin. At all times material hereto, Schmidt was employed by MC and MCSO as an Inspector, was part of senior command and therefore was directly responsible for the health, safety, security, welfare and humane treatment of all inmates at the CJF, including Jawson and her Unborn Child. At all times material hereto, Schmidt had direct oversight over medical, clerical and correctional staff assigned to CJF. At all times material hereto, Schmidt supervised and had control over the management and operation of the MCSO, and was responsible for the MCSO's policies, procedures and training or lack thereof. At all times material hereto, Schmidt was aware of the MCSO's constitutional deficiencies and long-term non-compliance with the Consent Decree, as well as Shansky's recommendations, but failed to take the necessary action to remedy the constitutional deficiencies and subhuman treatment of inmates in need of medical care. Schmidt

deliberately ignored said deficiencies in disregard of those held at the CJF, including Jawson and her Unborn Child. Schmidt ignored, with deliberate indifference, CJF's lack of sufficient staff, staff's lack of sufficient training, and CJF's lack of policy and procedure, both written and unwritten, to adequately address/access Jawson and the Unborn Child, and other inmates, in need of medical care.

13.     Defendant Major Nancy Evans ("Evans"), is an adult citizen of the United States and a resident of the State of Wisconsin. At all times material hereto, Evans was employed as a Major at CJF by MC and MCSO and was responsible for the health, safety, security, welfare and humane treatment of all inmates at CJF, including Jawson and the Unborn Child, in December of 2016. At all times material hereto, Evans had oversight of the medical, clerical and corrections staff assigned to CJF. At all times material hereto, Evans was responsible for MCSO's policies, procedures, and training. At all times material hereto, Evans was aware of the MCSO's deficiencies and lack of compliance with the Consent Decree as well as Medical Monitor Shansky's recommendations, but took no action to remedy the deficiencies. Evans ignored, with deliberate indifference, CJF's lack of sufficient staff, staff's lack of sufficient training and CJF's lack of policy and procedure, both written and unwritten, to adequately address Jawson and the Unborn Child, and other inmates, in need of medical care.

14.     Defendant, Kevin Nyklewicz ("Nyklewicz"), Deputy Inspector at the CJF, is an adult citizen of the United States and a resident of the State of Wisconsin. At all times material hereto, Nyklewicz was employed as the Deputy Inspector at CJF by MC and the MCSO and was therefore responsible for the health, safety, security, welfare and humane treatment of all inmates at the CJF, including Jawson and the Unborn Child, in December of 2016. At all times material hereto, Nyklewicz was directly responsible for the MCSO's policies, procedures, and training or lack thereof. At all times material hereto, Nyklewicz was aware of the MCSO's deficiencies and lack of

6

compliance with the Consent Decree, as well Shansky's recommendations, but took no action to remedy the deficiencies. In fact, Nyklewicz deliberately ignored said deficiencies in deliberate disregard of those held at the CJF, including Plaintiffs. Nyklewicz ignored, with deliberate indifference, CJF's lack of sufficient staff, staff's lack of sufficient training and CJF's lack of policy and procedure, both written and unwritten, to adequately address/access Jawson and the Unborn Child, and other inmates, in need of medical care.

15. Defendant, Janet Borucki ("Borucki"), Corrections Captain at CJF, is an adult citizen of the United States and a resident of the State of Wisconsin. At all times material hereto, Borucki was employed as Corrections Captain at CJF by MC and the MCSO and was therefore responsible for the health, safety, security, welfare and humane treatment of all inmates at CJF, including Jawson and the Unborn Child, in December of 2016. At all times material hereto, Defendant Borucki was directly responsible for MCSO's policies, procedures and training, or lack thereof. At all times material hereto, Borucki was aware of the MCSO's deficiencies and lack of compliance with the Consent Decree as well as Shansky's recommendations, but took no action to remedy the deficiencies, in fact Borucki deliberately ignored said deficiencies in deliberate disregard of the rights of those held at CJF, including Jawson and the Unborn Child. Borucki ignored, with deliberate indifference, CJF's lack of sufficient staff, staff's lack of sufficient training and CJF's lack of policy and procedure, both written and unwritten, to adequately address/access Jawson, and other inmates, in need of medical care.

16. Defendant, William Duckett ("Duckett"), Corrections Captain at CJF, is an adult citizen of the United States and a resident of the State of Wisconsin. At all times material hereto, Duckett was employed as a Corrections Captain at CJF by MC and the MCSO and was therefore responsible for the health, safety, security, welfare and humane treatment of all inmates at the CJF, including Jawson and the Unborn Child, in August of 2016. At all times material hereto, Duckett

7

was directly responsible for the MCSO's policies, procedures and training, or lack thereof. At all times material hereto, Duckett was aware of the MCSO's deficiencies and lack of compliance with the Consent Decree, as well as Shansky's recommendations, but took no action to remedy the deficiencies. In fact, Duckett deliberately ignored said deficiencies in deliberate disregard of the rights of those held at CJF, including Jawson and the Unborn Child. Duckett ignored, with deliberate indifference, the CJF's lack of sufficient staff, staff's lack of sufficient training, and the CJF's lack of policy and procedure, both written and unwritten, to adequately address/access Jawson, and other inmates, in need of medical care.

17. Defendant, Amika Avery ("Avery"), Correctional Officer at CJF, is an adult citizen of the United States and a resident of the State of Wisconsin. At all times material hereto, Avery was employed as a Correctional Officer at CJF by MC and the MCSO and was responsible for the health, safety, security, welfare and humane treatment of all inmates at CJF, including Jawson and her unborn child, in December of 2016. Avery was present when vitals were taken on December 6, 2016, but took no action to assure Jawson received appropriate medical care or her proscribed methadone treatment. At all times material hereto, Avery was acting under color of state law, within the scope of her employment and authority as an employee or public official of MC, and acting, at times, pursuant to MC's and the MCSO's policies, customs, and practices, written and unwritten, which were the moving force behind the constitutional violations asserted herein.

18. Defendants John Does 1-10 are adult citizens of the United States and residents of the State of Wisconsin. At all times material hereto, John Does 1-10 were employed as Correctional Officers/Employees/staff at CJF by MC and the MCSO and were responsible for the health, safety, security, welfare and humane treatment of all inmates housed at CJF, including Jawson and the Unborn Child, in December of 2016. To date these individuals have not been identified as MCSO has refused to turn over pertinent records. At all times material hereto, John Does 1-10 were acting

8

under color of state law, within the scope of their employment and authority, and pursuant to MC's and the MCSO's policies, customs, and practices which were the moving force behind the constitutional violations asserted herein.

19. Defendant Milwaukee County, ("MC") with offices of its executive at 901 N. 9th Street, Suite 306, Milwaukee, Wisconsin 53233, and offices of its Corporate Counsel, located at 901 N. 9th Street, Suite 303, Milwaukee, Wisconsin 53233, is and was at all times material hereto, a Municipal Corporation organized under the laws of the State of Wisconsin. MC established, operated and maintained CJF and at all times material hereto, MC was responsible for training and supervising the employees of the MCSO, including those employed at CJF, the creation and implementation of policies and procedures at CJF, ensuring the MCSO was in compliance with the Consent Decree and had control and authority over contracts Armor. At all times material hereto, MC was aware of the MC and MCSO's deficiencies and lack of compliance with the Consent Decree, as well Shansky's recommendations, but took no action to remedy the deficiencies. In fact, MC deliberately ignored said deficiencies in deliberate disregard of those held at the CJF, including Jawson and the Unborn Child. MC ignored, with deliberate indifference, CJF's lack of sufficient staff, staff's lack of sufficient training and CJF's lack of policy and procedure, both written and unwritten, to adequately address/access Jawson and the Unborn Child, and other inmates, in need of medical care.

20. Defendant Dr. Karen Horton ("Horton"), is an adult citizen of the United States and a resident of the State of Wisconsin. At all times material hereto, Horton was employed, by Armor and MC, as the medical director at CJF and was acting under the color of state law, and was therefore responsible for the health, safety, security, welfare and humane treatment of all inmates at the CJF, including Jawson and the Unborn Child, in December of 2016. At all times material Horton was directly responsible for the MCSO/Armor's policies, procedures and training, or lack

9

thereof as it related to medical care provided to inmates. At all times material hereto, Horton was aware of the MCSO's deficiencies and lack of compliance with the Consent Decree as well as Shansky's recommendations, but took no action to remedy the deficiencies. In fact, Horton deliberately ignored said deficiencies in deliberate disregard of those held at the CJF, including Jawson and the Unborn Child. Horton ignored staff's, both medical and corrections staff, lack of sufficient training, and CJF's lack of policy and procedure, both written and unwritten, to adequately address/access Jawson, and other inmates, in need of medical care.

21. Defendant RN Courtney Holifield ("Holified"), is an adult citizen of the United States and a resident of the State of Wisconsin. At all times material hereto, Holifield was employed, by Armor and MC, as the director of nursing at CJF and was acting under the color of state law, and was therefore responsible for the health, safety, security, welfare and humane treatment of all inmates at CJF, including Jawson and the Unborn Child, in December of 2016. At all times material Holifield was directly responsible for the MCSO/Armor's policies, procedures and training, or lack thereof as it related to medical care provided to inmates. At all times material hereto, Holifield was aware of MC and MCSO's deficiencies and lack of compliance with the Consent Decree as well as Shansky's recommendations, but took no action to remedy the deficiencies. In fact, Holified deliberately ignored said deficiencies in deliberate disregard of those held at the CJF, including Jawson and the Unborn Child. Horton ignored staff's, both medical and correctional staff's, lack of sufficient training, and CJF's lack of policy and procedure, both written and unwritten, to adequately address/access Jawson, and other inmates, in need of medical care.

22. Defendant N.P. Katherine Meine ("Meine"), is an adult citizen of the United States and a resident of the State of Wisconsin. At all times material hereto, Meine was employed as a Nurse Practitioner at CJF by MC and Armor and was responsible for the health, safety, security, welfare and humane treatment of all inmates at CJF, including Jawson and the Unborn Child, in

December of 2016. At all times material hereto, Meine was acting under color of state law, within the scope of her employment and authority, and acting, at times, pursuant to MC's, MCSO's and Armor's policies, customs, and practices, written and unwritten, which were the moving force behind the constitutional violations asserted herein.

23.     Defendant R.N. Frederick Porlucas ("Porculas") is an adult citizen of the United States and a resident of the State of Wisconsin. At all times material hereto, Porculas was employed as a registered nurse at CJF by MC and Armor and was responsible for the health, safety, security, welfare and humane treatment of all inmates at CJF, including Jawson and the Unborn Child, in December of 2016. Porculas conducted vitals screenings of Jawson and recognized her acute need for medical care and monitoring, but took no action to assure Jawson received appropriate medical care or her proscribed methadone treatment. At all times material hereto, Porculas was acting under color of state law, within the scope of his employment and authority, and acting, at times, pursuant to MC's, MCSO's and Armor's policies, customs, and practices, written and unwritten, which were the moving force behind the constitutional violations asserted herein.

24.     Defendant R.N. Jackie Pitterle ("Pitterle") is an adult citizen of the United States and a resident of the State of Wisconsin. At all times material hereto, Pitterle was employed as a registered nurse at CJF by MC and Armor and was responsible for the health, safety, security, welfare and humane treatment of all inmates at CJF, including Jawson and the Unborn Child, in December of 2016. Pitterle conducted intake and mental health screenings of Jawson and recognized her acute need for medical care and monitoring, but took no action to assure Jawson received appropriate medical care or her proscribed methadone treatment. At all times material hereto, Pitterle was acting under color of state law, within the scope of her employment and authority, and acting, at times, pursuant to MC's, MCSO's and Armor's policies, customs, and

11

practices, written and unwritten, which were the moving force behind the constitutional violations asserted herein.

25.     Defendant R.N. Sheree Young ("Young") is an adult citizen of the United States and a resident of the State of Wisconsin. At all times material hereto, Young was employed as a registered nurse at CJF by MC and Armor and was responsible for the health, safety, security, welfare and humane treatment of all inmates at CJF, including Jawson and the Unborn Child, in December of 2016. Young conducted vitals screenings of Jawson, administered medication, and recognized her acute need for medical care and monitoring, but took no action to assure Jawson received appropriate medical care or her proscribed methadone treatment.  At all times material hereto, Young was acting under color of state law, within the scope of her employment and authority, and acting, at times, pursuant to MC's, MCSO's and Armor's policies, customs, and practices, written and unwritten, which were the moving force behind the constitutional violations asserted herein.

26.     Defendant L.P.N. Lydia Williams ("Williams") is an adult citizen of the United States and a resident of the State of Wisconsin. At all times material hereto, Williams was employed as a licensed practical nurse at CJF by MC and Armor and was responsible for the health, safety, security, welfare and humane treatment of all inmates at CJF, including Jawson and the Unborn Child, in December of 2016. Williams conducted vitals screenings of Jawson, administered medication, and recognized her acute need for medical care and monitoring, but took no action to assure Jawson received appropriate medical care or her proscribed methadone treatment. At all times material hereto, Williams was acting under color of state law, within the scope of her employment and authority, and acting, at times, pursuant to MC's, MCSO's and Armor's policies, customs, and practices, written and unwritten, which were the moving force behind the constitutional violations asserted herein.

27. Defendant L.P.N. Alecia Santiago ("Santiago") is an adult citizen of the United States and a resident of the State of Wisconsin. At all times material hereto, Santiago was employed as a licensed practical nurse at CJF by MC and Armor and was responsible for the health, safety, security, welfare and humane treatment of all inmates at CJF, including Jawson and the Unborn Child, in December of 2016. Santiago conducted vitals screenings of Jawson, administered medication, and recognized her acute need for medical care and monitoring, but took no action to assure Jawson received appropriate medical care or her proscribed methadone treatment. At all times material hereto, Santiago was acting under color of state law, within the scope of her employment and authority, and acting, at times, pursuant to MC's, MCSO's and Armor's policies, customs, and practices, written and unwritten, which were the moving force behind the constitutional violations asserted herein.

28. Defendant, L.P.N. Bonnie Leigh ("Leigh") is an adult citizen of the United States and a resident of the State of Wisconsin. At all times material hereto, Leigh was employed as a licensed practical nurse at CJF by MC and Armor and was responsible for the health, safety, security, welfare and humane treatment of all inmates at CJF, including Jawson and the Unborn Child, in December of 2016. Leigh conducted vitals screenings of Jawson, administered medication, and recognized her acute need for medical care and monitoring, but took no action to assure Jawson received appropriate medical care or her proscribed methadone treatment. At all times material hereto, Leigh was acting under color of state law, within the scope of her employment and authority, and acting, at times, pursuant to MC's, MCSO's and Armor's policies, customs, and practices, written and unwritten, which were the moving force behind the constitutional violations asserted herein.

29. Defendant, L.P.N. Carla Bedneau ("Bedneau") is an adult citizen of the United States and a resident of the State of Wisconsin. At all times material hereto, Bedneau was employed

13

as a licensed practical nurse at CJF by MC and Armor and was responsible for the health, safety, security, welfare and humane treatment of all inmates at CJF, including Jawson and the Unborn Child, in December of 2016. Bedneau conducted vitals screenings of Jawson, administered medication, and recognized her acute need for medical care and monitoring, but took no action to assure Jawson received appropriate medical care or her proscribed methadone treatment. At all times material hereto, Bedneau was acting under color of state law, within the scope of her employment and authority, and acting, at times, pursuant to MC's, MCSO's and Armor's policies, customs, and practices, written and unwritten, which were the moving force behind the constitutional violations asserted herein.

30.     Defendant, L.P.N. Ja-Kal Walker ("Walker") is an adult citizen of the United States and a resident of the State of Wisconsin. At all times material hereto, Walker was employed as a licensed practical nurse at CJF by MC and Armor and was responsible for the health, safety, security, welfare and humane treatment of all inmates at CJF, including Jawson and the Unborn Child, in December of 2016. Walker conducted vitals screenings of Jawson, administered medication, and recognized her acute need for medical care and monitoring, but took no action to assure Jawson received appropriate medical care or her proscribed methadone treatment. At all times material hereto, Walker was acting under color of state law, within the scope of her employment and authority, and acting, at times, pursuant to MC's, MCSO's and Armor's policies, customs, and practices, written and unwritten, which were the moving force behind the constitutional violations asserted herein.

31.     John Does 11-20 are unnamed adult citizens of the United States and residents of the State of Wisconsin.  At all times material hereto, John Does 11-20 were employed at CJF by Armor and MC and were responsible for the providing health care to all inmates at CJF, including Jawson and the Unborn Child, in December of 2016.  To date these individuals have not been

14

identified as MCSO has refused to turn over pertinent records. At all times material hereto, John Does 11-20 were acting under color of state law, within the scope of their employment and authority, and pursuant to the policies, customs, and practices of Armor and MC, which were the moving force behind the constitutional violations asserted herein

32.     Defendant Armor Correctional Health Services, Inc. ("Armor"), with its principal office located at 4960 S.W. 72nd Avenue, Suite #400, Miami, FL 33155, and its registered agent for service of process, CT Corporation System, 8020 Excelsior Dr., Ste. 200, Madison, WI 53717, is a Florida Corporation, incorporated under the laws of the State of Florida, operating in the State of Wisconsin for purposes of providing care to patients, and is responsible for the acts of its employees and agents involved in services provided to patients therein. At all times material hereto, Armor was acting under color of state law. At all times material hereto, Armor was deliberately indifferent to the serious medical needs and Constitutional rights of Jawson, the Unborn Child, and others similarly situated.

33.     Wisconsin County Mutual Insurance Corporation is a domestic insurance corporation duly conducting business in the State of Wisconsin and is engaged in the business of, among other things, issuing policies of insurance within the State of Wisconsin, with a mailing address of 22 E. Mifflin St., Ste. 900, Madison, WI 53703, with offices of its registered agent, Aegis Corporation located at 18550 W. Capitol Dr., Brookfield, WI 53045. Upon information and belief, prior to and including all relevant times hereto, Wisconsin County Mutual Insurance Company issued a policy of liability insurance to Milwaukee County and all employees and/or agents thereof. By the terms of said policy, Wisconsin County Mutual Insurance Company agreed to pay any and all sums for which MC and/or employees and agents thereof might be held legally liable for injuries or damages caused by MC and/or employees and agents thereof. Upon information and belief, said

policy was in full force and effect during all time periods relevant hereto. Pursuant to Wis. Stat. § 803.04, Wisconsin County Mutual Insurance Corporation is a proper party to this action.

34.     Evanston Insurance Company is a foreign insurance corporation duly conducting business in the State of Wisconsin and is engaged in the business of, among other things, issuing policies of insurance within the State of Wisconsin, with a business address of Ten Parkway North, Deerfield, IL 60015 with offices of its registered agent, Aegis Corporation located at 18550 W. Capitol Dr., Brookfield, WI 53045. Upon information and belief, prior to and including all relevant times hereto, Evanston Insurance Company issued a policy of liability insurance to Armor and all employees and/or agents thereof. By the terms of said policy, Evanston Insurance Company agreed to pay any and all sums for which Armor and/or employees and agents thereof might be held legally liable for injuries or damages caused by Armor and/or employees and agents thereof. Upon information and belief, said policy was in full force and effect during all time periods relevant hereto. Pursuant to Wis. Stat. § 803.04, Evanston Insurance Company is a proper party to this action.

35.     Defendant, Wisconsin Health Care Liability Insurance Plan is a Wisconsin insurance company whose address is 125 S. Webster St., Madison, WI 53703-3474, who is primarily engaged in the business of insurance. At all times relevant hereto, Wisconsin Health Care Liability Insurance Plan provided insurance to Karen B. Ronquillo-Horton, M.D. amongst others, insuring against liability imposed by law rising out of negligent conduct and/or constitutional violations and further insuring the defendants against any damages they might be liable to others by virtue of the negligent conduct and/or unconstitutional violations; that said policy or policies of insurance were in full force and effect at the time of the events that are subject of this lawsuit; that in said contract(s) of insurance Wisconsin Health Care Liability Insurance Plan reserved the right settle or adjust any claims arising thereunder and to defend any lawsuits instituted by virtue of any such claims and has a

direct interest in this litigation; that by virtue of the laws of the State of Wisconsin, Wis. Stat. §
803.04(2)(a), Wisconsin Health Care Insurance Plan is a proper defendant herein.

36.     Defendant, Injured Patients and Families Compensation Fund ("the Fund") is a legal
liability fund created by Wisconsin Statues for the purpose of paying the portion of claims in excess
of limits expressed under statute or the maximum liability for which the insureds are insured,
whichever limit is greater.

37.     All of the Defendants are sued in their individual and official capacities.  At all times
material hereto, all Defendants were acting under the color of state law; pursuant to their authority
as officials, agents, contractors or employees of Milwaukee County; within the scope of their
employment as representatives of public entities and were deliberately indifferent to the
Constitutional and Statutory rights of Jawson and the Unborn Child.

## V.  FACTS

38.     That on December 1, 2016, Jawson was 8 months and 3 weeks pregnant (35 weeks).

39.     That on December 1, 2016, Jawson was on probation for misdemeanor charges
stemming from a case decided in 2015.

40.     That on December 1, 2016, Jawson's probation officer placed a probation hold on
Jawson and decided to have her detained at the Milwaukee County Justice Facility ("CJF") pending
the outcome of the probation violation determination.

41.     That on December 1, 2016, Jawson's probation officer took Jawson to Aurora Sinai
Medical Center to have her medically cleared by doctors because she was 8 months and 3 weeks
pregnant.

42.     That on December 1, 2016, Aurora Sinai Medical Center doctors determined that
Jawson's baby was viable, that Jawson's baby had a strong heart beat and fetal tones, and that
Jawson's pregnancy was progressing as normal.

43.     That on December 2, 2016, CJF correctional staff, medical staff, and mental health staff were well aware that Jawson was 8 months and 3 weeks pregnant.

44.     That upon being booked into CJF on December 2, 2016, the CJF medical staff examined Jawson and found that Jawson's baby had strong fetal heart tones.

45.     That on December 2, 2016, Jawson informed CJF correctional and medical staff that she had been properly prescribed methadone since 2012 and that she had been taking methadone daily since that time.

46.     That on December 2, 2016, CJF medical staff ordered that Jawson be transported daily to an off-site medical clinic to receive her daily methadone dose.

47.     That on December 2, 2016, CJF medical staff also prescribed Jawson Tylenol 3, which is a combination of the opiate Codeine and Acetaminophen.

48.     Tylenol 3 is not a medically appropriate substitute for methadone treatment nor is it medically appropriate to proscribe to a pregnant woman and her unborn child.

49.     That prior to December 2, 2016, Jawson had never been prescribed Tylenol 3, nor had she ever taken Tylenol 3.

50.     That on December 3, 2016, CJF correctional staff refused and/or failed to transport Jawson to the off-site medical facility for her daily methadone dose.

51.     That on December 3, 2016, CJF medical staff were able to obtain Jawson's baby's fetal heart tones during a routine examination.

52.     That on December 4, 2016, CJF correctional staff refused and/or failed to transport Jawson to the off-site medical facility for her daily methadone dose.

53.     That on December 4, 2016, Jawson complained to CJF correctional and medical staff that she was experiencing severe contractions and cramping.

18

54. That on December 4, 2016, CJF correctional and medical staff refused and/or failed to take any action pertaining to Jawson's complaints of severe contractions and cramping and failed to provide Jawson any medical attention in regard to her late term pregnancy.

55. That on December 4, 2016, CJF medical staff were able to obtain Jawson's baby's fetal heart tones during a routine examination.

56. That on December 5, 2016, CJF correctional staff refused and/or failed to transport Jawson to the off-site medical facility for her daily methadone dose.

57. That on December 5, 2016, Jawson complained to CJF correctional and medical staff that she was experiencing severe contractions and cramping.

58. That on December 5, 2016, CJF correctional and medical staff refused and/or failed to take any action pertaining to Jawson's complaints of severe contractions and cramping and failed to provide Jawson any medical attention in regard to her late term pregnancy.

59. That on December 5, 2016, CJF medical staff were able to obtain Jawson's baby's fetal heart tones during a routine examination.

60. That on December 6, 2016, after having not received her daily methadone dose for several days, CJF correctional staff finally transported Jawson to the off-site medical facility for her methadone prescription.

61. That on December 6, 2016, Jawson complained to CJF correctional and medical staff that she was experiencing severe contractions and cramping.

62. That on December 6, 2016, CJF correctional and medical staff refused and/or failed to take any action pertaining to Jawson's complaints of severe contractions and cramping and failed to provide Jawson any medical attention in regard to her late term pregnancy.

63. That on December 6, 2016, CJF medical staff were able to obtain Jawson's baby's fetal heart tones during a routine examination.

64.     That on December 7, 2016, Jawson complained to CJF correctional and medical staff that she was experiencing severe contractions and cramping.

65.     That on December 7, 2016, CJF correctional and medical staff refused and/or failed to take any action pertaining to Jawson's complaints of severe contractions and cramping and failed to provide Jawson any medical attention in regard to her late term pregnancy.

66.     That on December 7, 2016, CJF medical staff were able to obtain Jawson's baby's fetal heart tones during a routine examination.

67.     That on December 8, 2016, Jawson complained to CJF correctional and medical staff that she was experiencing severe contractions and cramping.

68.     That on December 8, 2016, CJF correctional and medical staff refused and/or failed to take any action pertaining to Jawson's complaints of severe contractions and cramping and failed to provide Jawson any medical attention in regard to her late term pregnancy.

69.     That on December 8, 2016, CJF medical staff were able to obtain Jawson's baby's fetal heart tones during a routine examination.

70.     That on December 9, 2016, CJF medical staff were unable to obtain Jawson's baby's fetal heart tones during their routine examination.

71.     That on December 9, 2016, CJF medical staff ordered Jawson be transported to the hospital for an examination because staff was unable to find any fetal heart tones.

72.     That on December 9, 2016, CJF staff called for an ambulance to transport Jawson to the hospital.

73.     That on December 9, 2016, after Jawson had been shackled to the ambulance gurney and was awaiting transport to the Aurora Sinai Medical Center inside the CJF garage, a CJF sergeant spontaneously came down to the ambulance and informed Jawson that she was being released from custody.  Jawson was subsequently unshackled and transported to Aurora Sinai Medical Center.

20

74.     That to the best of Plaintiffs' knowledge, no investigation as to the death of Jawson's unborn child ever occurred.

75.     That on December 9, 2016, Aurora Sinai Medical Center doctors examined Jawson and were unable to obtain Jawson's baby's fetal heart tones or fetal heartbeat.

76.     That on December 9, 2016, Aurora Sinai Medical doctors determined that Jawson's baby was deceased inside of Jawson's womb.

77.     That on December 10, 2016, Columbia St. Mary's doctors induced Jawson's labor and Jawson was forced to give birth to a dead baby, who was healthy and viable prior to Jawson entering CJF.

78.     That from December 3, 2016, through December 5, 2016, CJF correctional staff refused and/or failed to transport Jawson to the off-site medical facility for her daily methadone dose.

79.     That from December 4, 2016, through December 8, 2016, CJF correctional and medical staff refused and/or failed to take any action when Jawson informed said staff that she was experiencing severe contractions and cramping and failed to provide Jawson any medical attention in regard to her late term pregnancy.

80.     That from December 2, 2016, through December 8, 2016, CJF medical staff were able to obtain Jawson's baby's fetal heart tones.  CJF medical staff were unable to obtain fetal heart tones for the first time on December 9, 2016.

81.     That from December 2, 2016, through December 9, 2016, Jawson received Tylenol 3 on a daily basis per CJF medical staff orders.

82.     That to date, the Milwaukee County Sheriff's Office has refused to respond to repeated open records requests sent by undersigned counsel.

83. That Milwaukee County, the Milwaukee County Sheriff's Office, and the Milwaukee County Sheriff's Office employees, agents, and/or independent contractors, violated Jawson's rights as protected by the United States Constitution 42 U.S.C. § 1983, the Wisconsin Constitution, and Wisconsin Statutory Law by being deliberately indifferent to the health, welfare, and life of Jawson and her deceased baby.

84. That Milwaukee County and the Milwaukee County Sheriff's Office failed to properly supervise and train its staff, employees, and agents.

85. That the Milwaukee County Sheriff's Office blatantly violated the Consent Decree from Milwaukee County Circuit Court Case No. 1996-CV-1835 that was in full force and effect in December of 2016.

### Milwaukee County's Pattern of Violating Constitutional Rights of Inmates at The Justice Facility

*Recent Deaths at County Justice Facility*

86. Plaintiffs hereby reassert and reallege each and every allegation contained in Paragraphs 1 through 85 as if fully set forth herein.

87. Since April of 2016, there have been 4 other tragic and wholly preventable deaths at the CJF.

88. On April 24, 2016, Terrill Thomas died at CJF while in the custody of the MCSO. Thomas had been arrested and booked into the CJF on April 14, 2016. Despite suffering from a severe mental illness and in the midst of a mental breakdown, Thomas was placed in a Maximum Security Unit at the CJF and never seen by any mental health professional. After displaying bizarre and erratic behavior, CJF staff cut-off the water supply to Thomas' cell on April 18, 2016. Six days later, Thomas' was found dead in his cell. Thomas' death subsequently was ruled a homicide by the Milwaukee County Medical Examiner with the cause of death being dehydration.

22

89.     On August 14, 2016 Laliah Swayzer, an infant, died at CJF in the custody and control of the MCSO in maximum security where her mother was being held, but was provided no medical treatment. Laliah's mother, Shade, was being held on probation hold and was eight and half months pregnant. Despite her obvious need for care and monitoring, Shade Swayzer was placed into solitary confinement, deprived of her medications and forced to give birth alone in a solitary cell. Officers ignored her pleas for help and failed to provide Laliah or her mother with any medical care. As a result, baby Laliah tragically died.

90.     On August 28, 2016, Kristina Fiebrink died at CJF while in the custody of the MCSO. Fiebrink had been arrested and booked into CJF on August 24, 2016, while she displayed clear signs of being under the influence of heroine, alcohol, and cocaine, which were noted by staff.[1] Despite exhibiting signs and symptoms of acute heroin and alcohol intoxication, Fiebrink was never placed on preventative detoxification protocol, seen or assessed by a medical practitioner, provided withdrawal medication, or placed on a heightened observation level while at CJF. On the night August 27, 2016, and into the early morning hours of August 28, 2016, Fiebrink screamed, begged, and pleaded for help in her cell, but correctional staff ever even bothered to check on her. Fiebrink was subsequently found deceased on the morning of August 28, 2016, in her cell by correctional staff.

91.     On October 28, 2016, Michael Madden died at the CJF while in the custody of the MCSO. At the time of Madden's arrest, he was suffering from a heart condition that he had since birth, as well as a heroin addiction. Despite these serious and grave medical conditions, Madden received little to no health care while in the CJF. On October 28, 2016, Madden suffered a seizure rendering him unconscious. The responding officers believed Madden was faking and failed to call a

---

[1] At the time of booking it was well known to CJF staff that Jawson had an extensive history of drug abuse.

medical emergency. The officers then attempted to pick and hold Madden up, but dropped him on his head. Madden subsequently was pronounced dead the night of October 28, 2016, at the CJF.

*Consent Decree*

92.     Plaintiffs hereby reassert and reallege each and every allegation contained in Paragraphs 1 through 91 as if fully set forth herein.

93.     The MCSO and Milwaukee County entered into a Consent Decree with a class of plaintiffs (current and future inmates at the CJF) in Milwaukee County Circuit Court Case No. 1996-CV-1835, which was approved by Milwaukee County Circuit Court Judge Thomas Donegan on June 19, 2001.

94.     The Consent Decree had two components: (1) Population control; and, (2) Medical care.

95.     First, the Consent Decree required that MC maintain a general population cap in the CJF, as well as a maximum cap on inmates held in the booking room. It provided that no inmate would spend more than thirty hours in the booking room and required better staffing and training for staff in that area.

96.     The Consent Decree required that MC to provide adequate, well-trained staff to provide health care to inmates and to conduct complete screening of inmates for physical and mental health conditions. It further set out requirements for physical examinations, dental care, women's health, sick call, mental health, chronic care, and emergencies.

97.     As part of the Consent Decree, the parties agreed that a medical monitor be appointed and approved by the Court to supervise MC's compliance with the Consent Decree's provisions while the court retained jurisdiction over the case until MC was in full compliance with the terms of the Consent Decree.

98.    At all times material hereto, Shansky was the Court approved medical monitor tasked with monitoring the County's compliance with the Consent Decree.

99.    During his tenure, Shansky identified and documented a series of systematic problems in the Jail's healthcare system.

100.    Specifically, Shansky has found that, "health care staffing shortages contribute to delays in access to care and deterioration in quality of care for prisoners; reductions in the number of correctional officers contribute to dangerous lack of access to health care and inability to detect health crisis, and may have played a role in some of the recent deaths at the Jail; that continued turnover in health care leadership positions contribute to lack of oversite of quality of care; and that the electronic record has serious deficiencies and must be altered or replaced."

101.    MC has exhibited a systematic deficiency in staffing for a period lasting over ten years.  MC, MCSO and Clarke had full knowledge of the same for over ten years.

102.    As a result of the lack of health care staff and deficient medical services at the CJF, correctional officers often improperly attempted to substitute their untrained judgment for that of medical professionals.

103.    The lack of staff at the CJF drastically affects MC's and MCSO's ability to respond timely and appropriately to medical emergencies and needs, which is precisely what caused the Unborn Child's untimely, horrific, and preventable death.

104.    Physical exams, when performed by CJF staff, are incomplete and inadequate, often lacking a referral to an appropriate medical professional.

105.    That untrained correctional officers are forced to make medical decisions concerning the health and welfare of prisoners.

106.    That inmates with acute medical conditions have suffered for days, failed to receive appropriate medical care or referrals and have then died at CJF.

25

107.    On several occasions, Shansky has found that MC and MCSO was not performing medical emergency drills as required by the Consent Decree.

108.    MC repeatedly has failed to conduct investigations into deaths that occurred in their facility, thereby allowing staff to avoid being disciplined for their actions and creating an atmosphere of deliberate indifference to the health and welfare of inmates.[2]

109.    The Consent Decree is still in force and the above listed failures have never been corrected although MC, Clarke, and/or Armor Correctional have been aware of the problems for over a decade.

110.    MC, MCSO, Clarke, and/or Armor Correctional, each had a duty to ensure that reasonable measures were taken to provide for the safety and welfare of inmates at the CJF.

111.    All Defendants were on notice of the unconstitutional conditions at CJF, and the problems found by Dr. Shansky during his multiple examinations of the CJF as part of the Consent Decree and each failed to rectify these conditions.

112.    The above acts and omissions of all Defendants, and each of them, constitute a course of conduct and failure to act amounting to deliberate indifference to the rights, health, safety, and welfare of Jawson and the Unborn Child and those similarly situated, resulting in the deprivation of their constitutional rights.

113.    Federal and state law, as well as accepted corrections and medical practices at the time of the incident provided, "fair warning" to Defendants that their actions and conduct were improper, incompetent, illegal, and in violation of Jawson and the Unborn Child's constitutional rights.

114.    The acts and omissions of the Defendants, as set forth above, violated clearly established and well-settled federal constitutional rights of the Plaintiffs, i.e., due process of law

---

[2] This allegation is made pursuant to Rule 11(b)(3).

under the Fourteenth Amendment, and cruel and unusual punishment under the Eighth and Fourteenth Amendments to the United States Constitution.

115. The acts and omissions of the Defendants, as set forth above, violated clearly established and well settled Rights of the Plaintiffs under Articles I, Sections One and Six of the Wisconsin Constitution

116. As a direct and proximate result of the acts and omissions of the Defendants as set forth above, the Plaintiffs suffered the following injuries and damages:

    a. Emotional distress, psychological distress, and mental anguish;
    b. Physical pain and suffering;
    c. Loss of companionship;
    d. Loss of future enjoyment of life;
    e. Fright and shock;
    f. Denial of social pleasure and enjoyment;
    g. Embarrassment, humiliation, and mortification,
    h. Violations of Constitutionally Protected Rights; and,
    i. Death.

## VI. VIOLATIONS OF LAW

### COUNT I
### Section 1983 Claims
### All Defendants

117. Plaintiffs hereby reassert and reallege each and every allegation contained in Paragraphs 1 through 116 as if fully set forth herein.

118. As a result of the Defendants' refusal to provide Jawson and the Unborn Child medical attention and the denial of Jawson's requests for immediate medical attention from December 3 to December 7, the Unborn Child tragically died and was born still-born on December 9, 2016.

119. At all relevant times, the late term and potential complications from Jawson's pregnancy was obvious and known, or should have been known to each of the above listed

27

Defendants commencing on December 2, 2016, and continuing through December 9, 2016, which the Defendants deliberately chose to ignore.

120. Defendants, and each of them, knew that Jawson and the Unborn Child were proscribed Methadone and suffering from serious medical conditions and needed immediate treatment to safely deliver the Unborn Child, but deliberately ignored the same by failing to provide proper medical care while Jawson was in the Justice Facility and by denying Jawson's request for help when experiencing stomach pain.

121. Defendants, and each of them, knew Jawson and the Unborn Child needed medical care or would suffer complications from the pregnancy.

122. That the above named Defendants, and each of them, were deliberately indifferent to Jawson and the Unborn Child's serious medical needs and intentionally deprived Jawson and the Unborn Child of the required medical care and treatment, and acted with reckless disregard of Jawson and the Unborn Child's obvious serious medical conditions, in violation of Jawson and the Unborn Child's rights, privileges, and immunities as guaranteed by the United States Constitution, the Eighth Amendment and Fourteenth Amendment, and Federal Statutes, including 42 U.S.C. § 1983.

123. That the conduct of the Defendants, and each of them, shocks the conscious, was reckless, and demonstrates a deliberate indifference to the consequences of their refusal to provide Jawson and the Unborn Child medical care while in the Justice Facility, and refusal to transport Jawson to the hospital for their proscribed methadone prescription or obtain appropriate care and treatment of the Unborn Child.

124. That the conduct of each Defendant, individually and/or as employees and/or agents of Milwaukee County at the Justice Facility were committed while acting under color of state law, depriving Jawson and the Unborn Child of their clearly established rights, privileges, and

28

immunities, in violation of the Fifth, Eighth, and Fourteenth Amendments of the United States Constitution, and of 42 U.S.C. § 1983.

125.     That Defendants, each of them, deprived Jawson and the Unborn Child of those rights, privileges and immunities secured by the United States Constitution and federal laws, while acting under the color of the laws of the State of Wisconsin, and the rules, regulations, customs and usages of the State of Wisconsin in violation of 42 U.S.C. § 1983.

126.     That the actions and omissions of all Defendants under the Fifth, Eighth, and Fourteenth Amendments to the United States Constitution, as well as 42 U.S.C. § 1983, were all performed under the color of state law and were unreasonable and performed knowingly, intentionally, maliciously, and with deliberate indifference to Jawson and the Unborn Child's safety, well-being and serious medical needs; with wanton intent for Jawson and the Unborn Child to suffer an unnecessary intentional infliction of pain and suffering by failing to obtain medical treatment, and failing to properly instruct, train, and supervise the staff of the Justice Facility, including the individual Defendants having responsibility over the care, supervision, and general welfare of Jawson and the Unborn Child; and the failure to develop and implement appropriate policies and procedures and to ensure proper instruction, training, supervision, and medical care, as well as the implementation, adoption, and/or tolerance of policies and/or procedures which deprived Jawson and the Unborn Child of medical attention for each of their serious medical needs as described above.  Said policies and/or procedures comprise a deliberate indifference to those serious medical needs of Jawson and the Unborn Child, by reason of which Plaintiffs are entitled to compensatory and/or punitive damages.

127.     That the conduct of each Defendant, was committed pursuant to, and in execution and implementation of, the color of state law and officially sanctioned policies, practices, ordinances, regulations, and/or customs of the Justice Facility, and each of the named Defendants exhibited a

29

deliberate indifference in violation of the Fifth, Eighth, and Fourteenth Amendments to the United States Constitution to Jawson and the Unborn Child's serious medical needs, and in violation of 42 U.S.C. 1983, causing the constitutional deprivation of Jawson and the Unborn Child's individual rights to-wit:

a. Deliberately failing to properly train the CJF staff, including medical personnel providing medical care to residents therein, to properly assess and determine when a resident is facing a medical emergency or in need of medical care;

b. Deliberately ignoring Jawson and the Unborn Child's immediate needs for medical treatment;

c. Deliberately failing to transport Jawson and the Unborn Child to an appropriate hospital for immediate medical care and treatment;

d. Deliberately failing to transport Jawson and the Unborn Child to receive methadone treatment or providing proper medication;

e. Deliberately failing to conduct timely security/rounds;

f. Deliberately failing to conduct meaningful security checks/rounds;

g. Deliberately and willfully failing to notify appropriate doctors, nurses, and medical staff of Jawson's condition;

h. Deliberately failing to hire, train, maintain, and implement competent correctional staff at the CJF;

i. Deliberately failing to hire, train, maintain, and implement competent medical staff at the CJF;

j. Deliberately failing to discipline, instruct, supervise, and/or control the conduct of the correctional staff at the CJF, thereby encouraging the wrongful acts and omissions complained of herein;

k. Deliberately failing to discipline, instruct, supervise, and/or control the conduct of the medical staff at the CJF, thereby encouraging the wrongful acts and omissions complained of herein;

l. Deliberately allowing a custom and/or practice at the CJF of deliberately ignoring complaints of inmates or their need for medical attention;

m. Deliberately, willfully, and wantonly withholding required medical care to Jawson and the Unborn Child when they had actual knowledge of her serious medical conditions requiring immediate attention and monitoring;

n. Deliberately, willfully, and wantonly failing to ensure that the CJF was properly staffed; and,

o. Deliberately, willfully, and wantonly failing to ensure the Consent Decree was complied with.

128.    That as a direct and proximate result of the deliberate, willful, wanton, and reckless violation of Jawson and the Unborn Child's Constitutional Rights, Plaintiffs suffered injuries and damages including, but not limited to the following:

a. Emotional distress, psychological distress, and mental anguish;

b. Physical pain and suffering;
c. Loss of companionship;
d. Loss of future enjoyment of life;
e. Fright and shock;
f. Denial of social pleasure and enjoyment;
g. Embarrassment, humiliation, and mortification;
h. Reasonable expenses of necessary medical care, treatment and services;
i. Violations of Constitutional Rights;
j. Death;
k. Punitive damages for Defendants' willful conduct; and,
l. Any and all other damages, including, but not limited to attorney fees recoverable under 42 U.S.C. §§ 1983 and 1988.

## COUNT I(a)
**Monell Liability**
**Defendants Milwaukee County and Armor Correctional - Section 1983 Liability Extends to these defendants through the theory of Monell Liability**

A.    *Failure to Train and Adequately Supervise – Defendant Milwaukee County and Armor*

129.    Plaintiffs hereby reassert and reallege each and every allegation contained in Paragraphs 1 through 128 as if fully set forth herein.

130.    That the Defendants failed to adequately train doctors, nurses and other medical staff at all times material to this Complaint on how to care for pregnant inmates, persons in their custody suffering from serious-acute-obvious medical conditions, persons in their custody suffering from methadone withdrawal, and individuals in their custody in need of immediate medical attention, how to perform life-saving procedures, how to recognize serious medical emergencies, how to properly proscribe or administer medication, how to react to serious medical emergencies, and how to conduct intake screenings, amongst other failures.

131.    That the failure of the Defendants to adequately train and supervise its medical staff concerning several key issues such as how to care for pregnant inmates, persons in their custody suffering from serious-acute-obvious medical conditions, persons in their custody suffering from methadone withdrawal and individuals in their custody in need of immediate medical attention, how to perform life-saving procedures, how to recognize serious medical emergencies, how to react to

31

serious medical emergencies, and how to conduct intake screenings, demonstrated a deliberate indifference on the part of Defendant Armor Correctional as to whether the failure to adequately train and supervise their medical employees would result in the violation of the Constitutional, Civil, and Statutory Rights of individuals in their care, such as Jawson and the Unborn Child.

132.    That the above mentioned failure to adequately train and supervise medical staff providing health care at the Justice Facility was a direct and proximate cause of the violations of the Constitutional, Civil, and Statutory Rights of Jawson and the Unborn Child.

133.    That the above mentioned failure to adequately train and supervise medical staff, and the acts and omissions of these Defendants was a direct and proximate cause of the unborn child's death, and the injuries, damages suffered by both Jawson and the Unborn Child.

B. *Policies, Practices, and/or Customs of Milwaukee County Failing to Formulate and Execute an Investigation Process and/or Internal Administrative Review for In-Custody Deaths/Medical Events and Discipline Those Who Have Been Found To Have Mistreated Individuals and Failed To Provide Appropriate Medical Care or Call For Attention – Defendant Milwaukee County*

134.    Plaintiffs hereby reassert and reallege each and every allegation contained in Paragraphs 1 through 133 as if fully set forth herein.

135.    That the MCSO failed to formulate and execute an investigation process and/or internal administrative review policy for in-custody deaths/medical events and discipline those who had been found to have mistreated individuals, failed to provide appropriate medical care, or call for medical attention.

136.    That the MCSO's policy, practice, and/or custom of failing to formulate and execute an investigation process and/or internal administrative review policy for in-custody deaths/medical events and discipline those who had been found to have mistreated individuals, failed to provide appropriate medical care, or call for medical attention authorized and created a culture of deliberate

indifference to medical needs of persons in the custody of Milwaukee County at the CJF, with or without life threatening situations, which became a de facto policy of the MCSO.

137.    That the MCSO's policy, practice, and/or custom of failing to formulate and execute an investigation process and/or internal administrative review policy for in-custody deaths/medical events and discipline those who had been found to have mistreated individuals, failed to provide appropriate medical care or call for medical attention authorized and created a culture of deliberate indifference to medical needs of persons in the custody of Milwaukee County at the CJF, with or without life threatening situations, which lead to a de facto policy of officers and staff not being held accountable for their failure to provide medical care and/or call for medical care.

138.    That these above mentioned de facto policies of the MCSO constitute deliberate indifference to the constitutional rights of those in the custody of Milwaukee County, and these de facto policies created an environment that would allow officers to ignore the medical needs of individuals in their custody and were factors that were a significant and causal of the injuries and damages suffered by Plaintiffs, as well as the eventual death of the Unborn Child.

139.    That the Defendants had actual and/or constructive knowledge of each and every one of the above-mentioned policies, practices, and/or customs and were deliberately indifferent as to whether said policies would change.

140.    That each and every one of the above mentioned policies, practices, and/or customs was a direct and proximate cause of the violations of Plaintiffs' Constitutional, Civil, and Statutory Rights, which lead to the injuries and damages suffered by Jawson and the Unborn Child.

141.    That the above mentioned policies, practices, and/or customs, as well as the acts and omissions of the Defendants were a direct and proximate cause of the injuries and damages suffered by Plaintiffs, as well as the eventual death of the Unborn Child.

>    C.  *Policies, Practices, and/or Customs of Allowing Untrained Correctional Staff to make Decisions Concerning the Need for Appropriate Medical Treatment –Defendant Milwaukee County*

33

142. Plaintiffs hereby reassert and reallege each and every allegation contained in Paragraphs 1 through 141 as if fully set forth herein.

143. That the actions of the Defendants of allowing untrained correctional officers to make decisions concerning the need for appropriate medical care were done in accordance with Defendants' policies, practices, and/or customs condoning the use of such procedures to deal with all inmates. That this policy, practice, and/or custom was officially adopted.

144. That this official policy, practice, and/or custom of allowing untrained correctional officers to make decisions concerning the need for appropriate medical care violated Jawson and the Unborn Child's Constitutional, Civil and Statutory Rights, and permitted, encouraged, tolerated, and/or ratified the actions of Defendant correctional staff, all in a malicious, reckless disregard, and/or with deliberate indifference regarding the Constitutional, Civil, and Statutory Rights of Jawson and the Unborn Child.

145. That the Defendants had actual and/or constructive knowledge of each and every one of the above-mentioned policies, practices, and/or customs and were deliberately indifferent as to whether said policies would change.

146. That each and every one of the above mentioned policies, practices, and/or customs was a direct and proximate cause of the violations of Plaintiffs' Constitutional, Civil and Statutory Rights, which lead to the injuries and damages suffered by Jawson and the Unborn Child, as well as the Unborn Child's eventual death.

147. That the above mentioned policies, practices, and/or customs, as well as the acts and omissions of the Defendants were a direct and proximate cause of the injuries and damages suffered by Jawson and the Unborn Child, as well as the Unborn Child's eventual death.

> D. *Policies, Practices, and/or Customs of Ignoring the Requirements of the Consent Decree and Failing to Follow Recommendations of A Court Approved Medical Monitor Created a Culture In Which*

*Milwaukee County Employees were Deliberately Indifferent to the Constitutional Rights of Inmates and Disregarded Proper Policy and Procedure – Defendant Milwaukee County*

148.    Plaintiffs hereby reassert and reallege each and every allegation contained in Paragraphs 1 through 147 as if fully set forth herein.

149.    Defendant Milwaukee County and the MCSO failed to comply with the terms and provisions of the Consent Decree concerning healthcare; failed to follow the recommendations of the Court approved Medical Monitor; failed to work towards compliance with the standards of the National Commission on Correction Healthcare; allowed officers to substitute their judgment as to medical issues for that of health care staff; failed to conduct emergency drills; and have exhibited a systematic deficiency in staffing, amongst other failures, these actions have been ratified as official policy thereby creating a culture where healthcare staff and correctional staff are deliberately indifferent to the Constitutional Rights of persons in their custody, such as Jawson and the Unborn Child.

150.    Milwaukee County's policy of allowing the failures identified in the previous paragraph have continued for years and are contrary to acceptable correctional practices.

151.    Milwaukee County's policy of allowing the failures identified in the previous paragraphs became a de facto policy of Milwaukee County and the MCSO, creating a culture of indifference, which lead to de facto policy of officers and health care staff not being held accountable for their failure to provide medical care and/or call for medical care, further creating a de facto policy of Milwaukee County and the MCSO that officers and health care staff were not required to provide a constitutional level of health care and/or follow policies and procedures in regards to medical care.

152.    That these above mentioned de facto policies of Milwaukee County and the MCSO constitute deliberate indifference against individuals in the custody of Milwaukee County at the CJF, and the de facto policies created an environment that would allow officers and health care staff to

35

ignore the medical needs of inmates and were factors that were significant and causal to the injuries and damages suffered by Jawson and the Unborn Child, as well as the Unborn Child's eventual death.

153.    That the Defendants had actual and/or constructive knowledge of each and every one of the above-mentioned policies, practices, and/or customs and were deliberately indifferent as to whether said policies would change.

154.    That each and every one of the above mentioned policies, practices, and/or customs was a direct and proximate cause of the violations of Plaintiffs' Constitutional, Civil and Statutory Rights, which lead to the injuries and damages suffered by Jawson and the Unborn Child, as well as the Unborn Child's eventual death.

155.    That the above mentioned policies, practices, and/or customs, as well as the acts and omissions of the Defendants, were a direct and proximate cause of the injuries and damages suffered by Jawson and the Unborn Child, as well as the Unborn Child's eventual death.

> E.    *Defacto Polices, Practices, and/or Customs of Not providing medical care to those inmates being held on probation holds or those that were not likely to be housed at CJF for a substantial amount of time– Defendant Milwaukee County and Armor*

156.    Plaintiffs hereby reassert and reallege each and every allegation contained in Paragraphs 1 through 155 as if fully set forth herein.

157.    That the actions of the Defendants systematically failing to provide medical care to those inmates held on a probation hold or those were not likely to be housed at CJF for a substantial amount of time were done in accordance with Defendants' policies, practices, and/or customs condoning the use of said procedures.

158.    That this defacto policy, practice, and/or custom of systematically failing to provide medical care to those inmates held on a probation hold or those inmates who were not likely to be housed at CJF for a substantial amount of time violated Plaintiffs' Constitutional, Civil, and

Statutory Rights and permitted, encouraged, tolerated, and/or ratified the actions of Defendant correctional staff, all in a malicious, reckless disregard, and/or with deliberate indifference regarding the Constitutional, Civil, and Statutory Rights of Jawson and the Unborn Child.

159.	That the Defendants had actual and/or constructive knowledge of each and every one of the above-mentioned policies, practices, and/or customs and were deliberately indifferent as to whether said policies would change.

160.	That each and every one of the above-mentioned policies, practices, and/or customs was a direct and proximate cause of the violations of Plaintiffs' Constitutional, Civil and Statutory Rights, which lead to the injuries and damages suffered by Jawson and the Unborn Child, as well as the Unborn Child's eventual death.

161.	That the above mentioned policies, practices, and/or customs, as well as the acts and omissions of the Defendants were a direct and proximate cause of the injuries and damages suffered by Jawson and the Unborn Child, as well as the Unborn Child's eventual death.

## COUNT II

### Negligence
### All Defendants

162.	Plaintiffs hereby reassert and reallege each and every allegation contained in Paragraphs 1 through 161 as if fully set forth herein.

163.	That by accepting Jawson and the Unborn Child into custody, Defendants undertook and owed to Jawson and her unborn child the duty to make reasonable efforts to care for them in a reasonably prudent manner, to exercise due care and caution and to follow the common law as it relates to persons in their custody who are unable to care for themselves or seek medical attention while in custody.

37

164. Notwithstanding the aforementioned duties, Defendants treated Jawson and her unborn child in a manner that was extremely negligent, careless, reckless, and without concern for her safety.

165. That Defendants, in the face of Jawson's obvious need for medical attention and assistance, failed to obtain medical attention, failed to identify a medical emergency, and/or failed to act as required.

166. Defendants failed to adequately train correctional staff and medical staff; failed to develop and implement proper policies and procedures for dealing with inmates suffering from withdrawal at the CJF; failed to have some method, policy, practice, and/or procedure in regards to identifying medical emergencies pertaining to inmates suffering withdrawal, and failed to have an intervention method, policy, practice, and/or procedure in regards to inmates suffering from withdrawal at the CJF so that treatment could be obtained on a timely basis.

167. Defendants engaged in conduct that was so negligent, careless, and reckless that it demonstrated a substantial lack of concern by failing to appropriately implement policies and procedures concerning the training of correctional staff and/or medical staff regarding the processing and relaying of medical information and request for emergent medical treatment and by failing to act on requests for emergent medical treatment, including, but not limited to:

    a. Failing to properly train the CJF staff, including medical personnel providing medical care to inmates and persons in custody therein, to properly assess and determine when an inmate/person in custody is facing a medical emergency;

    b. Failing to properly train the CJF staff, including medical personnel providing medical care to pregnant inmates and persons in custody therein, to properly assess and determine when a pregnant inmate/person in custody is facing a medical emergency;

    c. Negligently, carelessly, and recklessly ignoring Jawson's immediate needs for medical treatment;

    d. Negligently, carelessly, and recklessly failing to seek appropriate medical attention for a pregnant woman exhibiting obvious symptoms of withdrawal;

    e. Negligently, carelessly, and recklessly failing to render medical care to a woman suffering withdrawal symptoms;

f. Negligently, carelessly, and recklessly failing to notify appropriate doctors, nurses, and medical staff of Jawson's withdrawal symptoms;
g. Negligently, carelessly, and recklessly hiring, training, maintaining, and implementing competent correctional staff at the CJF;
h. Negligently, carelessly, and recklessly hiring, training, maintaining, and implementing competent medical staff at the CJF;
i. Negligently, carelessly, and recklessly failing to discipline, instruct, supervise, and/or control the conduct of the correctional staff at the CJF, thereby encouraging the wrongful acts and omissions complained of herein;
j. Negligently, carelessly, and recklessly failing to discipline, instruct, supervise, and/or control the conduct of the medical staff at the CJF, thereby encouraging the wrongful acts and omissions complained of herein;
k. Negligently, carelessly, and recklessly allowing a custom and/or practice at the CJF of deliberately ignoring complaints of inmates of their need for medical attention; and,
l. Negligently, carelessly, and recklessly withholding required medical care to Jawson and the Unborn Child when they had actual knowledge Jawson had serious medical conditions requiring immediate attention and access to Methadone treatment.

168. That as a direct and proximate result of the negligent, careless, and reckless disregard for Plaintiffs' safety and well-being, Plaintiffs suffered injuries and damages including, but not limited to the following:

a. Emotional distress, psychological distress, and mental anguish;
b. Physical pain and suffering;
c. Loss of companionship;
d. Loss of future enjoyment of life;
e. Fright and shock;
f. Denial of social pleasure and enjoyment;
g. Embarrassment, humiliation, and mortification;
h. Reasonable expenses of necessary medical care, treatment and services;
i. Constitutional violations;
j. Death;
k. Punitive damages for Defendants' willful conduct; and,
l. Any and all other damages, including, but not limited to attorney fees recoverable under 42 U.S.C. §§ 1983 and 1988.

## COUNT III

### Wrongful Death (Wis. Stat. § 895.03)
### All Defendants

169. Plaintiffs hereby reassert and reallege each and every allegation contained in Paragraphs 1 through 168 as if fully set forth herein.

39

170.    That the Unborn Child's death was caused by Defendants wrongful acts, negligence, and/or improper conduct

171.    That if the Unborn Child's death had not ensued, the Unborn Child would have been able to bring a claim against the above named Defendants for violations of Title 42 of the United States Code, Sections 1983 and 1985 for violations of her rights under the Fifth, Eighth and Fourteenth Amendments to the United States Constitution and her rights under the Wisconsin Constitution and Wisconsin Common law.

## VII.   CONDITIONS PRECEDENT

172.    Plaintiffs hereby reassert and reallege each and every allegation contained in Paragraphs 1 through 171 as if fully set forth herein.

173.    All conditions precedent to this lawsuit have been performed or otherwise occurred.

## VIII. PRAYER FOR RELIEF

174.    WHEREFORE, the Plaintiffs respectfully demands judgment in favor of Plaintiffs against each of the Defendants, jointly and severally, awarding Plaintiffs:

   a. Compensatory damages in an amount to be determined by the Jury;
   b. Punitive damages in an amount to be determined by the Jury;
   c. Reasonable costs and expenses associated with this action including attorneys' fees pursuant to 42 U.S.C. 1988; and,
   d. Any other further relief as this Honorable Court deems just and fair.

175.    Milwaukee County is liable pursuant to Wis. Stat. § 895.46 for payment of any judgment entered against the Defendants in this action because the Defendants were acting within the scope of their employment when they committed the above-mentioned unconstitutional and negligent actions.

176.    Plaintiffs hereby reserve their right to amend their Complaint as additional information becomes known through discovery.

## IX.   DEMAND FOR JURY TRIAL

40

177.    The Plaintiffs demand trial by jury.

Dated at this 15th day of July, 2019.

Respectfully Submitted,
Judge, Lang & Katers, LLC

By: _s/ David J. Lang_____
     David J. Lang (SBN: 1001218)
     Christopher P. Katers (SBN: 1067557)
     Kevin G. Raasch (SBN: 1100196)
     JUDGE LANG & KATERS, LLC.
     8112 W. Bluemound Road, Ste. 101
     Wauwatosa, WI 53213
     P: (414) 777-0778
     F: (414) 777-0776
     ckaters@jlk-law.com
     dlang@jlk-law.com
     kraasch@jlk-law.com
     Attorneys for Plaintiffs

By: _s/ James J. Gende, II_

James J. Gende, II
GENDE LAW OFFICES SC
N28 W23000 Roundy Drive, Suite 200
Pewaukee, WI 53072
(262) 970-8500  Phone
(262) 970-7100  Fax
jgende@jamesgendelaw.com