# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**ESTATE OF THE UNBORN CHILD
OF JENNIFER JAWSON, et al.,**
       **Plaintiffs,**

    v.                                                    Case No. 19-C-1008

**MILWAUKEE COUNTY, et al.,**
       **Defendants.**

## DECISION AND ORDER

Plaintiffs the Estate of the Unborn Child of Jennifer Jawson ("The Estate") and Jennifer Jawson ("Jawson") filed this lawsuit alleging various state and federal claims against Milwaukee County (the "County"), several employees of Milwaukee County, Milwaukee County Mutual Insurance Corporation, Armor Correctional Health Services, Inc., several employees of Armor Correctional Health Services, Inc., Wisconsin Health Care Liability Insurance Plan, and the Injured Patients and Families Compensation Fund. Before me are several motions to dismiss the amended complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

    **I.    THE COMPLAINT**

The complaint makes the following allegations.

On December 1, 2016 Jawson, who was 35 weeks pregnant at the time, was placed on a probation hold and detained at the Milwaukee County Justice Facility ("CJF") pending the outcome of her probation violation determination. Jawson was taken to the

- 1 -

Case 2:19-cv-01008-LA   Filed 08/19/20   Page 1 of 19   Document 139

Aurora Sinai Medical Center where doctors determined that her baby was viable, that the baby had a strong heartbeat and fetal tones, and that the pregnancy was progressing normally.

On December 2, 2016 Jackie Pitterle ("Pitterle") conducted Jawson's Intake Health Screening as well as her Mental Health Screening. The CJF staff were aware that Jawson was 35 weeks pregnant and conducted an exam finding Jawson's baby still had strong fetal heart tones. Jawson informed the CJF correctional and medical staff of several medical issues including: (1) that she had been prescribed methadone in 2012 and had been taking the medication daily ever since; (2) that she had been diagnosed with depression and anxiety; and (3) that she suffered from both Gestational Diabetes and high blood pressure. The medical staff, as noted by Dr. Karen Ronquillo-Horton ("Horton"), ordered that Jawson be transported daily to an off-site medical clinic to receive her prescribed methadone dose. Both the medical staff and the correctional staff were aware of this order. Horton also ordered a prescription for Jawson of Tylenol 3, a combination of the opiate Codeine and Acetaminophen, which plaintiffs allege is not appropriate for pregnant women.

For five consecutive days, from December 2nd until December 6th, either because the medical staff failed to set up the appointment or because correctional staff failed to transport her, Jawson was not receive her needed methadone treatment. Medical staff occasionally commented on her methadone use and opiate addiction during examinations but Jawson did not receive her daily treatment until December 7th. During this time, the

medical staff continued to monitor Jawson's pregnancy and each day found fetal heart tones. However, on December 4th Jawson began suffering from severe contractions and cramping, about which she complained to both medical and correctional staff daily. These contractions and cramps persisted throughout the rest of Jawson's stay at CJF.

On December 9, 2016 medical staff were unable to find fetal heart tones during an exam. CJF staff called for an ambulance to transport Jawson to the Aurora Sinai Medical Center. Although Jawson had initially been shackled to the ambulance gurney while awaiting transport, a CJF sergeant came to the garage and informed Jawson that she was being released from custody. Jawson was unshackled and transported to the Aurora Sinai Medica center. Doctors were unable to find fetal heart tones and determined that the unborn child was deceased. The next day, doctors induced labor and Jawson gave birth to the stillborn child.

The CJF, per the complaint, has demonstrated a pattern of violating the constitutional rights of inmates at the facility. Four recent deaths at the facility are detailed in the complaint, including the death of an infant who was born in the jail and the death of a woman addicted to opiates who was not provided withdrawal treatment.

The amended complaint additionally alleges that MCSO and Milwaukee County entered into a Consent Decree in 2001 that required them to provide adequate, well-trained staff to provide health care to inmates. As part of the Consent Decree, parties agreed that a medical monitor be appointed to ensure compliance. That monitor, Shansky, identified and documented a series of systematic problems in the Jail's

healthcare system. Specifically, Shansky found staffing shortages leading to delays and deterioration in quality of care, reductions in the number of correctional officers contributing to lack of access to health care, continued turnover in leadership positions contributing to lack of oversite of quality of care, and a seriously deficient electronic record that needed to be altered or replaced.

## II. DISCUSSION

To avoid dismissal under Rule 12(b)(6), a complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The complaint must, at a minimum, "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555. In construing a plaintiff's complaint, I assume that all factual allegations are true but disregard statements that are conclusory. *Iqbal*, 556 U.S. at 678. Section 1983 claims are subject to the same plausibility pleading standard as other civil causes of action. *Tucker v. City of Chicago,* 907 F.3d 487, 491 (7th Cir. 2018).

The amended complaint enumerates four sets of claims on behalf of both the Estate and Jawson herself: (1) § 1983 claims against Avery, Horton, Holifield, Meine, Porlucas, Pitterle, Young, Santiago, Leigh, Bedneau, Williams, Walker, John Does 1–10, and John Does 11–20; (2) § 1983 claims against Milwaukee County and Armor Correctional via *Monell* liability; (3) Negligence claims against all defendants; and (4)

Wrongful Death claims against all defendants. Milwaukee County, Amika Avery, and Wisconsin County Mutual Insurance Company (the "Milwaukee County defendants") move to dismiss all § 1983 claims brought by the Estate, the Monell claims against Milwaukee County and Wisconsin County Mutual Insurance Corporation, and all state and federal claims against Avery. Armor Correctional Health Services Inc., Bedneau, Holifield, Meine, Pitterle, Porlucas, Santiago, and Walker (the "Armor defendants") move to dismiss all § 1983 claims brought by the Estate, all § 1983 claims against the medical staff, the *Monell* claims against Armor, the claims against Holifield and Meine in their official capacities, the negligence claims against the nurse defendants, and the wrongful death claims against all defendants.[1] Horton moves to dismiss all § 1983 claims brought by the Estate. Young moves to dismiss all § 1983 claims against her bought by both the Estate and Jawson. The motion to dismiss filed by Leigh is not yet fully briefed, so I will not address it at this time. I will address the rest of the arguments in turn.

### A. § 1983 Claims Brought by The Estate of the Unborn Child of Jennifer Jawson

In *Reed v.* Gardner, the Seventh Circuit held that a fetus is not a person within the scope of the Fourteenth Amendment and therefore cannot bring Fourteenth Amendment claims under 42 U.S.C. § 1983. The Armor Defendants have therefore moved that the § 1983 claims brought on behalf of the Estate of the Unborn Child be

---

[1] The Armor Defendants have filed two motions to dismiss. Their first motion to dismiss was filed before plaintiffs amended their complaint. Their second motion incorporates the arguments of the first and is directed at the amended complaint. Therefore, I will deny their first motion as moot and read it as directed toward the amended complaint to the extent it is incorporated by reference into their second motion.

- 5 -

Case 2:19-cv-01008-LA   Filed 08/19/20   Page 5 of 19   Document 139

dismissed. Wisconsin Health Care Liability Insurance, the Milwaukee County defendants and Horton each separately move for the same.

Plaintiffs acknowledge that binding Seventh Circuit precedent bars the Estate's § 1983 claims, but argue the court should nonetheless hold that a fetus is a person within the meaning of § 1983. Plaintiffs cite to *Douglas v. Hartford*, a non-binding case from the District of Connecticut that concluded a viable fetus was a person within the meaning of 42 U.S.C. § 1983. 542 F. Supp. 1267 (D. Conn. 1982). *Douglas* predates the Seventh Circuit's decision on the issue in *Reed* by eleven years. Therefore, I will grant the motions to dismiss the § 1983 claims brought on behalf of the Estate and dismiss the claims.

### B. § 1983 Claims Against Individually Named Defendants

To state an Eighth Amendment claim based on deficient medical care under §1983, a plaintiff must allege: (1) an objectively serious medical condition; (2) that the government official subjectively knew of the condition; and (3) that the official's indifference caused the plaintiff's injury. *Gayton v. McCoy*, 593 F.3d 610, 620 (7th Cir. 2010). An objectively serious medical condition is one that "has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would perceive the need for a doctor's attention." *Hayes v.* Snyder, 546 F.3d 516, 522 (7th Cir. 2008). Generally, § 1983 claims are based on personal liability of government officials, so a plaintiff must demonstrate that the individual defendant either caused or participated in the constitutional violation. *Vance v. Peters*, 97 F.3d 987, 991 (7th Cir. 1996).

Allegations that Jawson was 35 weeks pregnant and properly prescribed methadone permit the inference that she had an objectively serious medical condition, satisfying the first prong of the deliberate indifference standard. At issue are the second and third prongs.

### 1. Failure to Allege Deliberate Indifference against Avery

Avery argues that the plaintiffs do not allege that Avery had subjective knowledge of any facts related to Jawson's pregnancy or Jawson's need for methadone. According to Avery, the amended complaint fails to even assert any contact between Jawson and Avery beyond Avery being "present" when Jawson's vital signs were measured on December 6. These allegations, she argues, are insufficient to state a claim under § 1983.

I agree. Although plaintiffs allege that the correctional staff knew that Jawson was to receive daily methadone treatments and that the correctional staff may have failed to transport Jawson to her appointments, this is insufficient to state a claim of deliberate indifference against Avery. Even if Avery knew that Jawson was to receive daily off-site treatments, plaintiffs do not allege that Avery was responsible for transporting Jawson or that she was aware Jawson failed to receive the treatment. Plaintiffs allege that Jawson complained to correctional staff about "severe contractions and cramping," but even if Avery was the recipient of those complaints, Avery accompanied Jawson to at least one medical screening and plaintiffs allege no reason that Avery should have known the medical care was inadequate. The factual allegations are insufficient to support an inference that Avery's indifference caused the injury.

It is possible that during discovery plaintiffs will find that Avery was responsible for transporting Jawson to her daily methadone treatment and failed to do so. When an injury is caused by the actions or inactions of "an unknown member of a collective body, identification of the responsible party may be impossible without pretrial discovery." *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009) (*quoting Billman v. Indiana Department of Corrections*, 56 F.3d 785, 789 (7th Cir. 1995)). At such time, plaintiffs may move to amend their complaint to reinstate Avery as a defendant. Currently, however, plaintiffs have failed to allege sufficient facts to permit the reasonable inference that Avery was deliberately indifferent to Jawson's medical needs. Therefore, I will dismiss the § 1983 against Avery.

### 2. Failure to allege Deliberate Indifference on the part of the Medical Staff

The Armor defendants argue that the § 1983 claims against the individually named members of the medical staff should be dismissed. Young separately moves for the same. The Armor Defendants argue that plaintiffs have pled themselves out of a deliberate indifference claim by alleging that the medical staff provided daily monitoring of the fetus and ordered the daily methadone treatment. Per the allegations in the complaint, they argue, the medical staff were at most negligent and deliberate indifference requires more than mere negligence. *Farmer v. Brennan*, 511 U.S. 825, 835 (1994).

Deliberate indifference is a high standard, but plaintiffs have alleged facts which, taken as true, meet the standard. The fact that Jawson received some medical care does not defeat her deliberate indifference claims. Jails and prisons cannot shield themselves from liability "by shuttling sick or injured inmates to perfunctory medical appointments wherein no meaningful treatment is given." *Perez v. Fenoglio*, 792 F.3d 768, 777 (7th Cir. 2015). Rather, medical care must be provided that is "adequate in light of the severity of the condition and professional norms." *Id.* Deliberate indifference may occur when an official, aware of the risks, acts in a manner contrary to the recommendation of specialists or delays a prisoner's treatment for non-medical reasons. *Id.* Plaintiffs allege that she was properly prescribed methadone, that the CJF medical staff ordered daily methadone treatment, and that she did not receive that treatment for the first five days she was held at the facility. These allegations allow the plausible inference that Jawson was not provided with her daily methadone treatment either because medical staff ignored the valid prescription and order or because of a delay for non-medical reasons. Either is sufficient to state a claim under the deliberate indifference standard to the extent that a defendant was personally involved in those failures. While it is true that the allegations against certain members of the medical staff are insufficient, as discussed below, the allegations against the medical staff generally do not fail because the defendants provided some medical care. Therefore, I will not dismiss the § 1983 claims against the medical staff generally for failing to allege deliberate indifference.

### 3. Failure to Allege Deliberate Indifference on the part of Holifield, Walker, Bedneau, Santiago, and Young

The Armor defendants further argue that the § 1983 claims against Holifield, Walker, Bedneau, and Santiago should be dismissed because plaintiffs fail to allege the personal involvement necessary to show direct responsibility for the harm. Young files her own motion, making the same arguments. Plaintiffs allege that each of Holifield, Walker, and Bedneau was a member of the CJF medical staff, that each of them had some contact with Jawson, and that each was responsible for at least some aspect of her care, such as administering medication or conducting screenings. Plaintiffs do not allege that Walker, Bedneau, or Santiago were responsible for setting up Jawson's methadone treatments. Plaintiffs allege that these defendants administered medication, which may have included the Tylenol 3. The Tylenol 3, however, was prescribed by a phsycian and administering it according to that prescription may not even rise to negligence and certainly does not constitute deliberate indifference. Although Walker, Bedneau, and Santiago subjectively knew of Jawson's objectively serious medical needs, the alleged facts do not allow for an inference they failed to provide the medical care they were obliged to provide. It may be that, after discovery, plaintiffs learn that one of these defendants was responsible for setting up Jawson's treatment and failed to do so, in which case plaintiffs may move to amend their complaint and reinstate the relevant parties as defendants. At this point, however, I will dismiss the § 1983 charges against Santiago, Bedneau, and Walker.

In the case of Holifield, plaintiffs do not specifically allege any personal contact with Jawson. Rather, plaintiffs allege that Holifield was directly responsible for the "policies, procedures and training, or lack thereof as it related to medical care provided to inmates." Holifield cannot be held liable under § 1983 under a theory of *respondeat superior. See, e.g. Ashcroft v. Iqbal*, 556 U.S. 662, 676–77. Without any additional allegations of personal contact between Jawson and Holifield, or between Holifield and Jawson's case, the general allegations that all defendants were aware of Jawson's medical needs are merely conclusory. Therefore, I will dismiss the § 1983 claims against Holifield.

Plaintiffs have alleged more in the case of Young, however. Specifically, plaintiffs alleged that Young noted Jawson's past methadone use and "cited her as 'opiate dependence depression'" on December 4, after Jawson had not received her treatment in over two days. Read in the light most favorable to the plaintiffs, these allegations permit the inference that Young realized Jawson was going through withdrawal, i.e. that she was not receiving her prescribed daily treatments. The allegation that Jawson was not provided her treatment on December 4, or either of the next two days, allows the inference that Young did nothing to follow up on this realization. If Young subjectively knew that Jawson was failing to receive treatment for her objectively serious medical condition, then Young's failure to follow up in any way could constitute deliberate indifference to Jawson's medical needs. Therefore, I will not dismiss the deliberate indifference claims against Young.

### 4. Official Capacity Claims against Avery, Meine, and Holifield

Defendants argue that the § 1983 claims against Avery, Meine, and Holifield in their official capacities should be dismissed as they are duplicative of the *Monell* claims against Milwaukee County and Armor. I agree. A claim against an individual in their official capacity is "to be treated as a suit against the entity" in all but name. *Kentucky v. Graham*, 473 U.S. 159, 165–66. Therefore, I will dismiss the § 1983 claims against Avery, Meine, and Holifield in their official capacities.

### C. *Monell* Claims against Milwaukee County and Armor

In *Monell*, the Supreme Court established that a municipality can be held liable under § 1983 only "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflict the injury." *Monell v. Dep't of Soc. Svcs.*, 436 U.S. 658, 694 (1978). For purposes of § 1983, a private corporation like Armor acting under color of state law is treated as a municipal entity. *Jackson v. Ill. Medi-Car, Inc.*, 300 F.3d 760, 766 n. 6 (7th Cir. 2002). To state a *Monell* claims against Armor or the County, the plaintiffs must plead factual content that would allow me to draw the reasonable inference that (1) plaintiffs have suffered the deprivation of a constitutional right; and (2) that an official custom or policy of the relevant entity caused that deprivation. *Monell*, 436 U.S. at 694-95. The Seventh Circuit recognizes three general categories of municipal conduct that can constitute a "policy" for *Monell* purposes: (1) an express policy, statement, or ordinance or regulation that, when enforced, causes a constitutional deprivation; (2) an

- 12 -

Case 2:19-cv-01008-LA   Filed 08/19/20   Page 12 of 19   Document 139

unconstitutional practice so permanent and well-settled as to constitute a "custom or usage" with the force of law; and (3) the decision of a municipal policymaker with final policymaking authority in the area at issue. *See McCormick v. City of Chi.*, 230 F.3d 319, 324 (7th Cir. 2000); *Calhoun v. Ramsey*, 408 F.3d 375, 379 (7th Cir. 2005).

Plaintiffs' allegations that Jawson was deprived of a needed drug while in custody support the inference that Jawson was deprived of a constitutional right, in satisfaction of the first *Monell* element.

Whether plaintiffs' have alleged sufficient facts to support the inference that the deprivation was caused by an official policy of Armor or the County is a closer question. The amended complaint alleges, in a largely conclusory fashion, a wide variety of de facto policies, customs, and failures on the part of Armor and the County to properly train their staff. However, plaintiffs do allege sufficient facts to allow an inference of at least two plausible policies: (1) that both Armor and the County had a de facto policy of chronically understaffing the CJF, resulting in a lack of access to needed healthcare by the inmates; and (2) that there existed at both Armor and the County a de facto policy of failing to provide needed methadone treatment.

Plaintiff must demonstrate factual content to support an inference that the deprivation was caused by a policy rather than a random event. *See Thomas v. Cook County Sheriff's Dept.*, 604 F.3d 303 (7th Cir. 2010). Perhaps the most common method of factually supporting the inference that a de facto policy existed is to include in the complaint allegations of other, similar incidents. *See Id.* However, a "plaintiff pleading a

- 13 -

*Monell* claim need not 'identify every other or even one other individual' who had been affected by the alleged practice." *Harris v. Brown Cty.*, 2020 WL 4569143 at *3 (E.D. Wis.) (*Quoting White v. City of Chicago*, 829 F.3d 837, 844 (7th Cir. 2016)). Multiple alleged similar instances against a single person can support the inference of a de facto policy. *Cf. Harris*, (E.D. Wis. 2020)(Five alleged instances of jail staff providing plaintiff cold bologna sandwiches as a pregnancy snack found sufficient to infer a de facto policy). A de facto policy of deliberate indifference under the Eighth Amendment can also be inferred from a showing of "systemic and gross deficiencies in staffing, facilities, equipment, or procedures" in a facility's medical care system, so long as plaintiffs also show that a policy-making official knew of these deficiencies and failed to correct them. *Dixon v. Cty. of Cook*, 819 F.3d 343, 348 (7th Cir. 2016).

     Plaintiffs' allege that the CJF medial and correctional staff knew Jawson needed daily methadone treatment yet failed to provide it on five separate occasions across an eight-day period. This allegation supports the inference of a de facto policy, among employees of both Armor and the County, of failing to provide inmates with needed methadone treatment. Additionally, plaintiffs allege that a medical monitor, in compliance with the consent decree, found that "health care staffing shortages contribute to delays in access to care and deterioration in quality of care for prisoners; reductions in the number of correctional officers contribute to dangerous lack of access to health care and inability to detect health crisis." This allegation supports the inference

- 14 -

of a systemic and gross deficiency in staffing as well as an inference that the relevant policy makers at both Armor and the County knew of this deficiency.

Finally, plaintiffs must allege facts allowing the inference that the policy was the "moving force" behind the suffered constitutional violation. *Bd. Of the Comm'rs of Bryan Cnty. V. Brown*, 520 U.S. 397, 399 (1997). The factual allegations allow the inference of a de facto policy failing to provide needed methadone treatment and that Jawson suffered a constitutional violation when she was not provided her needed methadone treatment; taken together, the allegations allows for an inference that the de facto policy was the moving force behind the constitutional violation. Regarding the de facto policy of chronic understaffing, the amended complaint alleges that the chronic understaffing drastically affected the defendants' ability to respond to medical needs and that Jawson's medical needs were not met. Taken with the allegation that Jawson failed to receive her prescribed treatment, these allegations allow for the reasonable inference that the defendants' policies of understaffing caused harm to the plaintiffs. *C.f. Harris* at *3.*

Defendants additionally argue that the policies alleged are too broad and, if read together, would amount to *respondeat superior* liability for Armor and Milwaukee County. Plaintiffs respond that they were alleging a series of possible policies that could be responsible for the harm. Regardless, plaintiffs have alleged facts sufficient to permit a reasonable inference that a single, discrete policy or custom on the part of Milwaukee County or Armor caused the harm in question. That some of the alleged policies or facts

are superfluous is not relevant to the analysis. Therefore, I will not dismiss the *Monell* claims against Milwaukee County and Armor.

### D. Negligence Claims

To establish a negligence claim under Wisconsin law, plaintiffs must allege: (1) a duty of care on the aprt of the defendants; (2) a breach of that duty; (3) a causal connection between the breach and the injury; and (4) an actual loss or damages. *Hammann v. U.S.A. and Barron County, Wis.*, 24 F.3d 976, 979 (7th Cir. 1994). Under Wisconsin law, everyone owes to the world at large a duty of ordinary care. *Behrendt v. Gulf Underwriters Ins. Co.*, 318 Wis.2d 622, 635 (2009).

#### 1. Negligence Claims Against Nurse Defendants

The Armor defendants argue that that the negligence claims against each individually named nurse must be dismissed. They argue that the negligence claims against the nurses are, in fact, medical negligence governed by Wis. Stat. § 655 rather than common-law negligence. Under § 655, nurses employed by a healthcare provider, as defined in the chapter, have no personal exposure for malpractice liability. *Rogers v. Saunders*, 309 Wis.2d 238, 241 (Ct. App. 2008).

Plaintiffs have not alleged the nurse defendants are employed by a health care provider as defined in Wis. Stat. § 655. If the nurse defendants are not employed by a healthcare provider, then they are not covered by Wis. Stat. § 655 and a common-law negligence claim may proceed as normal. *See Smith v. Hentz*, 2018 U.S. Dist. LEXIS 44220, *3–4 (W.D. Wis. 2018) (*citing Phelps v. Physicians Ins. Co. of Wisconsin*, 2005

WI 85, ¶62). It is possible that their employer may be shown to be a Healthcare Provider under the meaning of the statute, in which case the nurses' employer or their employers' insurance company would be liable for any negligence in the course of their employment. However, that is not a reason to dismiss the negligence claims against the nurses at this stage, so I will not dismiss the negligence claims against the nurse defendants.

### 2. Negligence Claims Against Avery

Avery argues that the negligence claims against her should be dismissed for failure to state a claim. Specifically, she argues that the amended complaint fails to allege any actions or knowledge on the part of Avery other than her being present during one examination. I agree. Plaintiffs do not allege any specific action or inaction on the part of Avery that could constitute a breach of her duty of care. Therefore, I will dismiss the negligence claim against Avery.

## E. Wrongful Death Claims

### 1. Armor Defendants and Young

The Armor defendants ask that if I dismiss the § 1983 claims, *Monell* claims, and negligence claims that I also dismiss the wrongful death claims against the individual defendants as there would be no underlying theory of liability. Young files a separate motion adopting the same arguments. Since I am not dismissing the *Monell* claims or the negligence claims against the Armor Defendants or Young, I will not dismiss the wrongful death claims.

### 2. Avery

Avery argues that the wrongful death claim against her should be dismissed for failure to state a claim. Specifically, she argues that the amended complaint fails to allege any actions or knowledge on the part of Avery other than her being present during one examination. I agree. Since I am dismissing the § 1983 claims and negligence claims against Avery, there remains no alleged wrongful act on which a wrongful death claim could rely. Therefore, I will dismiss the wrongful death claims against Avery without prejudice.

### F. Motion to Extend Time For Response To Remaining Claims

Accompanying their motion to dismiss, the Milwaukee County defendants have moved the court to formally extend the deadline for them to respond to any remaining aspects of the amended complaint until fourteen days after I rule on their motion to dismiss. Because plaintiffs have not opposed this motion, I will grant it.

### III. CONCLUSION

**IT IS ORDERED** that the motion to dismiss at ECF No. 31 is **DENIED AS MOOT.**

**IT IS FURTHER ORDERED** that the motion to dismiss at ECF no. 78 is **GRANTED IN PART** as to the § 1983 claims brought by the Estate of the Unborn Child and the federal and state law claims brought against Avery and **DENIED IN PART** as regards the *Monell* claims.

**IT IS FURTHER ORDERED** that the motion to extend time at ECF no. 78 is **GRANTED.**

**IT IS FURTHER ORDERED** that the motion to dismiss at ECF no. 94 is **GRANTED IN PART** as to the § 1983 claims brought by the Estate and the § 1983 claims against Holifield, Walker, Bedneau, and Santiago and **DENIED IN PART** as regards the *Monell* claims and state law claims.

**IT IS FURTHER ORDERED** that the motions for joinder at ECF nos. 103 and 109 **GRANTED** and § 1983 claims brought by the Estate are dismissed.

**IT IS FURTHER ORDERED** that the motion to dismiss at ECF no. 123 is **GRANTED IN PART** and the § 1983 claims brought by the Estate of the Unborn Child are dismissed and **DENIED IN PART** as regards the remaining § 1983 claims against Young.

Dated at Milwaukee, Wisconsin this 19th day of August, 2020.

<u>s/Lynn Adelman</u>
LYNN ADELMAN
United States District Judge