## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

---

THE ESTATE OF THE UNBORN CHILD OF
JENNIFER JAWSON and JENNIFER JAWSON,

      **Plaintiffs,**

     **v.**

                                     **Case No. 19-CV-1008**

**MILWAUKEE COUNTY, et al,**

      **Defendants.**

---

### PLAINTIFFS' PRETRIAL REPORT

---

    NOW COMES the Plaintiffs, The Estate of the Unborn Child of Jennifer Jawson (the "Estate") and Jennifer Jawson ("Jawson"), by and through their attorneys, Katers & Granitz, LLC, and Gende Law Office, S.C., pursuant to the Court's Local Rules, provides the following Pretrial report.

### A.    <u>SUMMARY OF THE FACTS, CLAIMS, AND DEFENSES</u>

    On December 2, 2016, Jennifer Jawson was booked into the Milwaukee County Criminal Justice Facility ("the Jail") on a probation hold. At the time, Jawson was approximately 34 weeks pregnant and was prescribed 150 mgs of methadone daily. Defendant Nurse Jackie Pitterle conducted Jawson's intake health screening and documented that Jawson was over 32 weeks pregnant and was prescribed 150 mgs of methadone per day. Pitterle called defendant Dr. Karen Horton, the medical director of the Jail, to discuss Jawson's care. Pitterle explained to Horton that Jawson had a high-risk pregnancy and was receiving daily methadone treatment. There is a dispute of fact as whether or not Dr. Horton gave a verbal order that Jawson should be immediately referred for an outside methadone

clinic appointment. Regardless, no such order was documented and there is no evidence that any Armor staff attempted to initiate a referral until December 6.

The Jail cannot administer methadone so patients must be referred to an outside methadone clinic. On December 3, Jawson did not receive her prescribed dose of methadone and states that she felt "horrible" and experienced multiple withdrawal symptoms including a runny nose, sweating, cramping, insomnia, and loss of appetite. On December 4, Jawson did not receive her prescribed dose of methadone and states that she felt "absolutely horrible" and was experiencing withdrawal symptoms including restless sleep, runny nose, constant yawning, watery eyes, sneezing, lethargy, a loss of appetite, and cramping.

On December 5, Jawson again did not receive her prescribed dose of methadone. She states that she again experienced withdrawal symptoms. Defendant Nurse Practitioner Katherine Meine conducted a COWS assessment that day and concluded that Jawson was not suffering from withdrawal. Jawson informed Meine she had not received her methadone treatment since December 2. After examining Jawson, Meine contacted Mia Seymore, an administrative assistant, to check on the status of the methadone referral and was told that the methadone appointment was pending. Jawson also states that Meine failed to administer Jawson's prescribed aspirin on December 5.

On December 6, Jawson was examined by Nurse Porlucas, and Jawson again informed him that she had not received her methadone. Porlucas, frustrated that "nothing was getting done," obtained a release of information form from Jawson and initiated a referral to a methadone clinic himself. The next day, December 7, jail staff transported Jawson to the clinic and she received a methadone treatment for the first time since December 2. On December 9, Jawson was again examined by Porlucas. During the examination, Porlucas was unable to detect a fetal heartbeat. Porlucas called Horton who was also unable to find a fetal heartbeat. Horton called an ambulance and Jawson was taken to a hospital where her fetus was declared dead.

2

**B.     STATEMENT OF THE ISSUES**

1.     Did the remaining Defendants, individually, violate Jawson's constitutional rights by failing to take reasonable measures to provide treatment for Jawson's serious medical needs? To succeed on her Eighth Amendment failure to provide medical care claims against the Defendants, Jawson must prove her case by a preponderance of the evidence.

2.     What amount of compensatory and/or punitive damages, if any, is Jawson entitled to recover against the Defendants who failed to provide her medical care based on her Eight Amendment claim?

3.     Did Dr. Horton fail to use the degree of care, skill, and judgment which a reasonable doctor would exercise in the same or similar circumstances, having due regard for the state of medical science at the time Jawson was treated? Did Dr. Horton provide the Estate and Jawson with negligent medical care?

4.     What amount of compensatory damages, if any, is the Estate and Jawson entitled to recover against Dr. Horton who provided negligent medical care?

**C.     WITNESSES**

Subject to the Court's ruling on motions *in limine,* Plaintiffs may call the following witnesses at trial:

1.     Plaintiff, Jennifer Jawson will testify regarding her interactions with the defendants, the lack of medical care she received while she was incarcerated at the Milwaukee County Jail ("CJF"), the delay in providing her methadone treatment, the death of her unborn child, and her own subsequent injuries.

3

2.    Defendant, Dr. Karen Horton. Horton was employed as the Medical Director at the CJF and oversaw inmates at CJF, including Jawson, in December of 2016. Dr. Horton will testify regarding the circumstances surrounding Jawson's care and the loss of her child.

3.    Defendant Nurse Jackie Pitterle. Pitterle was employed as a Nurse Practitioner at CJF by Armor and was responsible for the health, safety, security, welfare and humane treatment of all inmates at CJF, including Jawson, in December of 2016. Pitterle will testify regarding the circumstances surrounding Jawson's care and the loss of her child.

4.    Defendant, Katherine Meine. Meine was employed as a Nurse Practitioner at CJF by Armor and was responsible for the health, safety, security, welfare and humane treatment of all inmates at CJF, including Jawson, in December of 2016. Meine will testify regarding the circumstances surrounding Jawson's care and the loss of her child.

5.    Ja-Kal Walker. Walker was employed as a Nurse Practitioner at CJF and was responsible for the health, safety, security, welfare and humane treatment of all inmates at CJF, including Jawson, in December of 2016. Walker will testify regarding the circumstances surrounding Jawson's care and the loss of her child.

6.    Jennifer Schultz. Schultz was employed at CJF by Armor and was responsible for the health, safety, security, welfare and humane treatment of all inmates at CJF, including Jawson, in December of 2016. Schultz will testify regarding the circumstances surrounding Jawson's care and the loss of her child.

7.    Sheree Young. Young was employed at CJF by Armor and was responsible for the health, safety, security, welfare and humane treatment of all inmates at CJF, including Jawson, in December of 2016. Young will testify regarding the circumstances surrounding Jawson's care and the loss of her child.

8.	Bonnie Leigh. Leigh was employed at CJF by Armor and was responsible for the health, safety, security, welfare and humane treatment of all inmates at CJF, including Jawson, in December of 2016. Leigh will testify regarding the circumstances surrounding Jawson's care and the loss of her child.

9.	Courtney Holifield. Holifield was employed at CJF by Armor and was responsible for the health, safety, security, welfare and humane treatment of all inmates at CJF, including Jawson, in December of 2016. Holifield will testify regarding the circumstances surrounding Jawson's care and the loss of her child.

10.	Carla Bedneau. Bedneau was employed at CJF by Armor and was responsible for the health, safety, security, welfare and humane treatment of all inmates at CJF, including Jawson, in December of 2016. Bedneau will testify regarding the circumstances surrounding Jawson's care and the loss of her child.

11.	Cornelius "Nick" Blain. Blain was Jawson's boyfriend during the dates in question and will testify regarding communications he had with Jawson while she was incarcerated, the Defendants and/or other third parties regarding Jawson's medical condition(s), diagnoses, symptoms and/or treatment related thereto.

12.	John May, Medical Director of Armor Correctional Health Services, Inc.: Dr. May will testify regarding: (1) Dr. May's qualifications, background, education and work experience; (2) Dr. May's employment or association with Armor Correctional Health Services, Inc.; (3) Dr. May's communications with Defendants and/or other third parties regarding Plaintiff's medical condition(s), diagnoses, symptoms and/or treatment related thereto; and/or (4) Armor Correctional Health Services, Inc.'s policies and procedures relating to the care and treatment of inmates incarcerated at the Milwaukee County Justice Facility.

5

13. Crystal Apfel. Apfel was a Bell ambulance EMT who transported Jawson from the CJF to Aurora Sinai Medical Center. Apfel will testify to her interactions and observations of Jawson at the CJF and during transport.

14. Austin Amato. Amato was a Bell ambulance EMT who transported Jawson from the CJF to Aurora Sinai Medical Center. Amato will testify to his interactions and observations of Jawson at the CJF and during transport.

15. Kayla McCullough. McCullough was employed as a Medical Administrator at CJF by MC and Armor and oversaw inmates at CJF, including Jawson, in December of 2016. McCullough will testify regarding the circumstances surrounding Jawson's care and the loss of her child

16. Frederick Porlucas. Porlucas was employed as a registered nurse at CJF by Armor and was responsible for the health, safety, security, welfare and humane treatment of all inmates at CJF, including Jawson, in December of 2016. Porlucas will testify regarding the circumstances surrounding Jawson's care and the loss of her child.

17. Kyna Taylor. Taylor is employed as a probation officer at Wisconsin Department of Corrections Taylor will testify regarding: (1) Taylor's qualifications, background, education and work experience; (2) Taylor's employment or association with the Wisconsin Department of Corrections; (3) Plaintiff's probation with the Wisconsin Department of Corrections; (4) Plaintiff's incarceration at the Milwaukee County Justice Facility; (5) Taylor's communications and/or interactions with Plaintiff, Defendants and/or other third parties regarding Plaintiff's probation, incarceration, medical condition(s), diagnoses, symptoms, and/or treatment related thereto; and/or (6) the Wisconsin Department of Corrections' policies and procedures relating to person(s) on probation.

18. Dr. James G. Linn, Columbia St. Mary's Hospital- Milwaukee, 2301 North Lake Drive, Milwaukee, WI 53211. Dr. Linn was Jawson's treating physician in 2016. Dr. Linn will testify as to Jawson medical conditions and care she received prior to the incident in question.

**Expert Witnesses.**

The Plaintiffs will call **<u>Dr. James Wheeler, MD</u>** as an expert witness at trial. Dr. Wheeler is a medical doctor and a board-certified Ob/Gyn. He has extensive experience as a practicing Ob/Gyn and has both training and experience supervising nurses and nurse practitioners in obstetric and gynecologic settings. As part of Wheeler's medical practice, he was involved in the diagnosis, care, and treatment of women with high-risk pregnancies. Dr. Wheeler will testify consistent with his deposition testimony and the expert report/opinions he rendered in this case subject to this court's order on summary judgment. (D. 217, pp. 6-10).

The Plaintiffs will call **<u>Dr. Jeffrey Junig</u>**, as an expert witness at trial. Dr. Junig is a medical doctor who is board certified in both psychiatry and addiction medicine. Junig also has a Ph.D. in Neuroscience. Junig has worked in the addiction field for over ten years and specifically with methadone-assisted treatment for over five years. He also has approximately four and a half years of experience as a prison psychiatrist, working at Taycheedah Correctional Institution and Oshkosh Correctional Institution. Dr. Junig will testify consistent with his deposition testimony and the expert report/opinions he rendered in this case subject to this court's order on summary judgment. (D. 217, pp. 10-11).

Plaintiffs reserve the right to call any of the witnesses listed by the Defendants.

D.    **<u>Exhibits</u>**

The following is a list of the exhibits (numbered according to Gen. L.R. 26.1) that Plaintiffs may offer at trial: Please See attached **Exhibit A**.

The Plaintiffs reserve the right to offer any of the exhibits listed by the Defendants and to amend this list based on evidence presented by the Defendants.

**E.**     **Deposition Transcripts and Recordings**

Plaintiffs do not intend to present any Deposition Testimony at Trial unless a witness becomes unavailable.

**F.**     **Length of Trial.**

The parties anticipate the trial will last 5 days.

**G.**     **Jury Trial**

    **i.**     **Proposed Voir Dire Questions.**

Set forth below are the Plaintiffs' proposed *voir dire* questions to be asked in combination with any other standard questions as a matter of course: (name, age, community residing in, children, extent of formal education, employment and spouse/partner's employment):

1. If you have children, what are their ages, education levels, and occupations, if any?

2. Have you, a relative, or a close friend ever been party to a lawsuit? If yes:

3. What type of lawsuit was it?

4. Were you, your relative, or close friend the person who filed the lawsuit or the person being sued? If neither, please explain.

5. Was the lawsuit resolved in a manner agreeable to you, your relative, or close friend?

6. Was there a verdict in any of the cases in which you served on a jury? What was the verdict?

7. Do you know anyone who is correctional officer and/or provides healthcare in a correctional setting?

8. Do you have any legal education or training? If so, please explain.

9. Do you have any medical education or training? If so, please explain.

10. Do you have any family or close friends who are in the medical profession? If so, please explain.

11. Have you, a relative, or a close friend ever worked for any governmental body, law enforcement agency, or security-related business? If so, please explain.

12. Have you ever applied for a job with a law-enforcement agency, government body, or security-related business? If so, please explain.

13. In this case, the witnesses include sheriff employees and correctional officers. Does anyone believe that a correctional officer is less or more credible or believable that any other person?

14. Do you believe that someone who has been arrested has a right to bring a lawsuit against a law enforcement officer or other public official the same as they would against a private citizen?

15. Do you believe that because a person was arrested they are not entitled to the same adequate medical care that is provided in private healthcare settings?

16. Do you believe someone who was arrested still has the right to recover damages for intangible items such as mental anguish, emotional injury and pain and suffering?

17. To what clubs, religious or civic organizations, societies, fraternal, community, professional associations, political organizations, unions, or other groups do you or your spouse or partner belong? Have you or your spouse or partner held leadership positions with any such organizations?

18. Do you hold any moral, religious, philosophical or other personal beliefs that might make it difficult to stand in judgment of another?

19. Have you or has anyone close to you been arrested? If so, what were the circumstances surrounding the arrest? Would the experience affect your judgment in the case?

20. Have you or has anyone close to you suffered from an emergency medical situation, like a heart attack, stroke, asthma attack, or allergic reaction? Would that experience affect your judgment in this case?

21. Have you personally given birth or been present during the birth of a baby?

22. If you believe the plaintiffs prove their case, are you willing to award money damages that you feel are commensurate with injuries at issue?

23. If you believe the plaintiffs prove their case, do you have a predetermined amount of money that you would award?

24. Do you believe that a person who is incarcerated is entitled to the same standard of medical care as he/she would receive if in a private setting?

25. Do you believe the life of a new-born child can be valued in a monetary way if the law allows you to do so?

26. Do you have any religious or other beliefs that prevent you from determining a monetary value for the death of a new-born child?

27. Have you ever lost a child or know someone who has?

## ii.    Proposed Substantive Jury Instructions

Set forth below are the Plaintiffs' proposed substantive Jury instructions. Unless otherwise indicated, all proposed instructions are taken from the Federal Civil Jury Instructions of the Seventh Circuit (2017 rev.), except where explicitly stated otherwise, and are referenced by the number of the pattern instruction in question. Plaintiffs reserve the right to revisit any issues associated with the jury instructions at the close evidence.

## FUNCTIONS OF THE COURT AND THE JURY

Members of the jury, you have seen and heard all the evidence and arguments of the attorneys. Now I will instruct you on the law.

You have two duties as a jury. Your first duty is to decide the facts from the evidence in the case. This is your job, and yours alone.

Your second duty is to apply the law that I give you to the facts. You must follow these instructions, even if you disagree with them. Each of the instructions is important, and you must follow all of them.

Perform these duties fairly and impartially. Do not allow sympathy, prejudice, fear or public opinion to influence you.

Nothing I say now, and nothing I said or did during the trial, is meant to indicate any opinion on my part about what the facts are or about what your verdict should be.

Instruction 1.01
Federal Civil Jury Instructions of the Seventh Circuit (2017 rev.)

## NO INFERENCE FROM JUDGE'S QUESTIONS

During this trial, I have asked a witness a question myself. Do not assume that because I asked questions, I hold any opinion on the matters I asked about, or on what the outcome of the case should be.

Instruction 1.02
Federal Civil Jury Instructions of the Seventh Circuit (2017 rev.)

## **ALL LITIGANTS EQUAL BEFORE THE LAW**

In this case, Plaintiffs are private citizens. The Defendants are private citizens operating under the color of law. All parties are equal before the law. Each of the parties in this case is entitled to the same fair consideration. You are thus not to afford any more credibility to statements made by witnesses or parties because they were acting under the color of law.

Instruction 1.03
Federal Civil Jury Instructions of the Seventh Circuit (2017 rev.)

Case 2:19-cv-01008-LA   Filed 08/07/23   Page 13 of 53   Document 266

## **EVIDENCE**

The evidence consists of the testimony of the witnesses, the exhibits admitted in evidence, and stipulations. A stipulation is an agreement between both sides that certain facts are true or that a person would have given certain testimony. In addition, I have taken judicial notice of certain facts. You must accept those facts as proved.

Instruction 1.04
Federal Civil Jury Instructions of the Seventh Circuit (2017 rev.)

Case 2:19-cv-01008-LA   Filed 08/07/23   Page 14 of 53   Document 266

## DEPOSITION TESTIMONY

During the trial, certain testimony was presented to you by the reading of a deposition/depositions and video. You should give this testimony the same consideration you would give it had the witnesses appeared and testified here in court.

Instruction 1.05
Federal Civil Jury Instructions of the Seventh Circuit (2017 rev.)

## WHAT IS NOT EVIDENCE

Certain things are not to be considered as evidence. I will list them for you:

First, if I told you to disregard any testimony or exhibits or struck any testimony or exhibits from the record, such testimony or exhibits are not evidence and must not be considered.

Second, anything that you may have seen or heard outside the courtroom is not evidence and must be entirely disregarded. This includes any press, radio, Internet or television reports you may have seen or heard. Such reports are not evidence and your verdict must not be influenced in any way by such publicity.

Third, questions and objections or comments by the lawyers are not evidence. Lawyers have a duty to object when they believe a question is improper. You should not be influenced by any objection, and you should not infer from my rulings that I have any view as to how you should decide the case.

Fourth, the lawyers' opening statements and closing arguments to you are not evidence. Their purpose is to discuss the issues and the evidence. If the evidence as you remember it differs from what the lawyers said, your memory is what counts.

Instruction 1.06
Federal Civil Jury Instructions of the Seventh Circuit (2017 rev.)

## <u>NOTE-TAKING</u>

Any notes you have taken during this trial are only aids to your memory.  The notes are not evidence.  If you have not taken notes, you should rely on your independent recollection of the evidence and not be unduly influenced by the notes of other jurors.  Notes are not entitled to any greater weight than the recollections or impressions of each juror about the testimony.

Instruction 1.07
Federal Civil Jury Instructions of the Seventh Circuit (2017 rev.)

Case 2:19-cv-01008-LA   Filed 08/07/23   Page 17 of 53   Document 266

## CONSIDERATION OF ALL EVIDENCE
## REGARDLESS OF WHO PRODUCED

In determining whether any fact has been proved, you should consider all of the evidence bearing on the question regardless of who introduced it.

Instruction 1.08
Federal Civil Jury Instructions of the Seventh Circuit (2017 rev.)

## **LIMITED PURPOSE OF EVIDENCE**

You will recall that during the course of this trial I instructed you that I admitted certain evidence for a limited purpose. You must consider this evidence only for the limited purpose for which it was admitted.

Instruction 1.09
Federal Civil Jury Instructions of the Seventh Circuit (2017 rev.)

Case 2:19-cv-01008-LA   Filed 08/07/23   Page 19 of 53   Document 266

## **WEIGHING THE EVIDENCE**

You should use common sense in weighing the evidence and consider the evidence in light of your own observations in life.

In our lives, we often look at one fact and conclude from it that another fact exists. In law we call this "inference." A jury is allowed to make reasonable inferences. Any inference you make must be reasonable and must be based on the evidence in the case.

Instruction 1.11
Federal Civil Jury Instructions of the Seventh Circuit (2017 rev.)

## DEFINITION OF "DIRECT" AND "CIRCUMSTANTIAL" EVIDENCE

You may have heard the phrases "direct evidence" and "circumstantial evidence." Direct evidence is proof that does not require an inference, such as the testimony of someone who claims to have personal knowledge of a fact. Circumstantial evidence is proof of a fact, or a series of facts, that tends to show that some other fact is true.

As an example, <u>direct evidence</u> that it is raining is testimony from a witness who says, "I was outside a minute ago and I saw it raining." <u>Circumstantial evidence</u> that it is raining is the observation of someone entering a room carrying a wet umbrella.

The law makes no distinction between the weight to be given to either direct or circumstantial evidence. You should decide how much weight to give to any evidence. In reaching your verdict, you should consider all the evidence in the case, including the circumstantial evidence.

Instruction 1.12
Federal Civil Jury Instructions of the Seventh Circuit (2017 rev.)

**TESTIMONY OF WITNESS**
**(DECIDING WHAT TO BELIEVE)**

You must decide whether the testimony of each of the witnesses is truthful and accurate, in part, in whole, or not at all. You also must decide what weight, if any, you give to the testimony of each witness.

In evaluating the testimony of any witness, [including any party to the case,] you may consider, among other things:

- the ability and opportunity the witness had to see, hear, or know the things that the witness testified about;

- the witness's memory;

- any interest, bias, or prejudice the witness may have;

- the witness's intelligence;

- the manner of the witness while testifying;

- the witness's age;

- and the reasonableness of the witness's testimony in light of all the evidence in the case.

Instruction 1.13
Federal Civil Jury Instructions of the Seventh Circuit (2017 rev.)

## PRIOR INCONSISTENT STATEMENTS [OR ACTS]

You may consider statements given by [*Party*] [*Witness under oath*] before trial as evidence of the truth of what he said in the earlier statements, as well as in deciding what weight to give his testimony.

With respect to other witnesses, the law is different. If you decide that, before the trial, one of these witnesses made a statement [not under oath] [or acted in a manner] that is inconsistent with his testimony here in court, you may consider the earlier statement [or conduct] only in deciding whether his testimony here in court was true and what weight to give to his testimony here in court.

[In considering a prior inconsistent statement[s] [or conduct], you should consider whether it was simply an innocent error or an intentional falsehood and whether it concerns an important fact or an unimportant detail.

Instruction 1.14
Federal Civil Jury Instructions of the Seventh Circuit (2017 rev.)

## NUMBER OF WITNESSES

You may find the testimony of one witness or a few witnesses more persuasive than the testimony of a larger number. You need not accept the testimony of the larger number of witnesses.

Instruction 1.17
Federal Civil Jury Instructions of the Seventh Circuit (2017 rev.)

Case 2:19-cv-01008-LA   Filed 08/07/23   Page 24 of 53   Document 266

## **ABSENCE OF EVIDENCE**

The law does not require any party to call as a witness every person who might have knowledge of the facts related to this trial. Similarly, the law does not require any party to present as exhibits all papers and things mentioned during this trial.

Instruction 1.18
Federal Civil Jury Instructions of the Seventh Circuit (2017 rev.)

## EXPERT WITNESSES

You have heard [a witness] [witnesses] give opinions about matters requiring special knowledge or skill. You should judge this testimony in the same way that you judge the testimony of any other witness. The fact that such person has given an opinion does not mean that you are required to accept it. Give the testimony whatever weight you think it deserves, considering the reasons given for the opinion, the witness's qualifications, and all of the other evidence in the case.

Instruction 1.21
Federal Civil Jury Instructions of the Seventh Circuit (2017 rev.)

## DEMONSTRATIVE EXHIBITS

Certain [*describe demonstrative exhibit, e.g., models, diagrams, devices, sketches*] have been shown to you. Those [*short description*] are used for convenience and to help explain the facts of the case. They are not themselves evidence or proof of any facts.

Instruction 1.24
Federal Civil Jury Instructions of the Seventh Circuit (2017 rev.)

## MULTIPLE CLAIMS;
## MULTIPLE PLAINTIFFS/DEFENDANTS

You must give separate consideration to each claim and each party in this case. Although there are three defendants, it does not follow that if one is liable, any of the others is also liable. Although there are two plaintiffs, it does not follow that if one is successful, the other is, too.

In considering a claim against a defendant, you must not consider evidence admitted only against other defendants.

Instruction 1.25
Federal Civil Jury Instructions of the Seventh Circuit (2017 rev.)

Case 2:19-cv-01008-LA   Filed 08/07/23   Page 28 of 53   Document 266

## **BURDEN OF PROOF**

When I say a particular party must prove something by "a preponderance of the evidence," or when I use the expression "if you find," or "if you decide," this is what I mean: When you have considered all the evidence in the case, you must be persuaded that it is more probably true than not true.

Instruction 1.27
Federal Civil Jury Instructions of the Seventh Circuit (2017 rev.)

## BURDEN FOR AFFIRMATIVE DEFENSE

The defendants have the burden of proving the facts necessary to establish any of their affirmative defenses by a preponderance of the evidence. *St. Paul Mercury Ins. Co. v. Viking Corp.*, 2007 WL 129063, at *16 (E.D. Wis. Jan. 12, 2007); *U.S. v. Peters*, 476 F.Supp. 259 (E.D. Wis. Sept. 6, 1979).

If the preponderance of the evidence does not support Defendants' defenses and the preponderance of the evidence does support Plaintiffs' claims, then you should decide and write on the verdict form what percentage of the total negligence of all Defendants was caused by each Defendant.

Plaintiffs' Special Jury Instruction #1

## SELECTION OF PRESIDING JUROR;
## GENERAL VERDICT

Upon retiring to the jury room, you must select a presiding juror. The presiding juror will preside over your deliberations and will be your representative here in court.

Forms of verdict have been prepared for you.

[Forms of verdict read.]

(Take these forms to the jury room, and when you have reached unanimous agreement on the verdict, your presiding juror will fill in, date, and sign the appropriate form.)

OR

(Take these forms to the jury room, and when you have reached unanimous agreement on the verdict, your presiding juror will fill in and date the appropriate form, and all of you will sign it.)

Instruction 1.32
Federal Civil Jury Instructions of the Seventh Circuit (2017 rev.)

31

## CAUTIONARY INSTRUCTION BEFORE RECESS

We are about to take our first break during the trial, and I want to remind you of the instruction I gave you earlier. Until the trial is over, you are not to discuss this case with anyone, including your fellow jurors, members of your family, people involved in the trial, or anyone else. If anyone approaches you and tries to talk to you about the case, do not tell your fellow jurors but advise me about it immediately. Do not read or listen to any news reports of the trial. Finally, remember to keep an open mind until all the evidence has been received and you have heard the views of your fellow jurors.

I may not repeat these things to you before every break that we take, but keep them in mind throughout the trial.

Instruction 2.01
Federal Civil Jury Instructions of the Seventh Circuit (2017 rev.)

**<u>DEPOSITION AS SUBSTANTIVE EVIDENCE</u>**

A deposition is the sworn testimony of a witness taken before trial. The witness is placed under oath to tell the truth and lawyers for each party may ask questions. The questions and answers are recorded.

The deposition of [*Witness*], which was taken on [*date*], is about to be presented to you. Deposition testimony is entitled to the same consideration and is to be judged, insofar as possible, in the same way as if the witness had been present to testify.

[Do not place any significance on the behavior or tone of voice of any person reading the questions or answers.]

Instruction 2.08
Federal Civil Jury Instructions of the Seventh Circuit (2017 rev.)

Case 2:19-cv-01008-LA   Filed 08/07/23   Page 33 of 53   Document 266

**GENERAL: REQUIREMENT OF PERSONAL INVOLVEMENT**

Plaintiffs must prove by a preponderance of the evidence that [*name of individual defendant*] was personally involved in the conduct that Plaintiffs complains about. You may not hold [*Individual defendant*] liable for what others did or did not do.

Instruction 7.02
Federal Civil Jury Instructions of the Seventh Circuit (2017 rev.)

## GENERAL: "UNDER COLOR OF LAW"

One of the things Plaintiffs must prove is that Defendants acted "under color of law."

### (a) Public employee defendant

A person who is employed by the government acts "under color of law" if he or she uses or misuses authority that he or she has because of his or her official position. A person may act under color of law even if he or she is violating a [state] [local] law or policy. You may find that Defendants acted under color of law even if he or she was acting outside his or her authority if he or she represented himself or herself as having that authority or if he or she otherwise used his or her position to accomplish the act.

### (b) Non-public employee defendant

To establish that Defendants acted "under color of law," Plaintiffs must prove by a preponderance of the evidence, first, that Defendant and [*a government employee; or identify government employee(s)*] reached an understanding to [*describe alleged conduct*] and second, that Defendants knowingly participated in joint activity with [*government employee*].

Instruction 7.03
Federal Civil Jury Instructions of the Seventh Circuit (2017 rev.)

Case 2:19-cv-01008-LA   Filed 08/07/23   Page 35 of 53   Document 266

**LIMITING INSTRUCTION CONCERNING EVIDENCE OF STATUTES, ADMINISTRATIVE RULES, REGULATIONS, AND POLICIES**

You have heard evidence about whether Defendants conduct violated [a state statute/administrative rule/locally imposed procedure or regulation].

You may consider this evidence in your deliberations [as to [*identify claim*]]. But remember that the issue is whether Defendant [*describe constitutional violation claimed, e.g., "falsely arrested Plaintiff," "used excessive force on Plaintiff"*], not whether a [statute/rule/procedure/ regulation] might have been violated.

Instruction 7.04
Federal Civil Jury Instructions of the Seventh Circuit (2017 rev.)

## EIGHTH AND FOURTEENTH AMENDMENTS:
## FAILURE TO PROVIDE MEDICAL ATTENTION – ELEMENTS

To succeed on their claims of failure to provide medical care, each Plaintiff must prove each of the following things by a preponderance of the evidence:

1.      Plaintiff had a serious medical need. A serious medical need is a condition that a doctor says requires treatment or something so obvious that even someone who is not a doctor would recognize that it requires treatment.

2.      Defendant was aware that Plaintiff had a serious medical need or strongly suspected facts showing a strong likelihood that Plaintiff had a seriously medical need but refused to confirm whether these facts were true. You may infer this from the fact that the need was obvious.

3.      Defendant consciously failed to take reasonable measures to provide treatment for the serious medical need. Plaintiff does not have to show that Defendant ignored her or provided no care. If Defendant provided some care, Plaintiff must show that Defendant knew her actions likely would be ineffective or that Defendant's actions were clearly inappropriate.

In deciding whether Defendant failed to take reasonable measures, you may consider the seriousness of Plaintiff's medical need, how difficult it would have been for Defendant to provide treatment, and whether Defendant had legitimate reasons related to safety or security for failing to provide treatment.

*Optional instruction in case involving a defendant who is a medical professional:*

You may infer that Defendant consciously failed to take reasonable measures if Defendant's [action] [failure to act] was such a substantial departure from accepted professional judgment, practice or standards that it showed a complete abandonment of medical judgment.

4.      As a result of Defendant's [actions; inaction], Plaintiff was harmed or subjected to a significant risk of harm. [Plaintiff may prove that Defendant harmed him with evidence that her condition worsened as a result of Defendant's conduct or that she suffered prolonged, unnecessary pain.

5.      Defendant acted under color of law.

If you find that a Plaintiff has proved each of these things by a preponderance of the evidence, then you must decide for Plaintiff, and go on to consider the question of damages.

If, on the other hand, you find that the Plaintiffs have failed to prove any one of these things by a preponderance of the evidence, then you must decide for Defendants, and you will not consider the question of damages.

Instruction 7.17
Federal Civil Jury Instructions of the Seventh Circuit (2017 rev.)

## DAMAGES: COMPENSATORY

If you find in favor of Plaintiff(s) on one or more of Plaintiffs claims, then you must determine the amount of money that will fairly compensate Plaintiff(s) for any injury that you find he sustained and is reasonably certain to sustain in the future as a direct result of the failure to provide plaintiff(s) with medical care.

Plaintiffs must prove their damages by a preponderance of the evidence. Your award must be based on evidence and not speculation or guesswork. This does not mean, however, that compensatory damages are restricted to the actual loss of money; they include both the physical and mental aspects of injury, even if they are not easy to measure.

You should consider the following types of compensatory damages, and no others:

a. The physical and mental and emotional pain and suffering and loss of a normal life that Plaintiffs have experienced and is reasonably certain to experience in the future. No evidence of the dollar value of physical or mental and emotional pain and suffering or loss of a normal life has been or needs to be introduced. There is no exact standard for setting the damages to be awarded on account of these factors. You are to determine an amount that will fairly compensate the Plaintiffs for the injury they have sustained.  Laliah's estate may seek damages for loss of life.

b. The decedent's loss of the capacity to carry on and enjoy her life's activities in a way she would have done had she lived.

c. The reasonable value of property damaged or destroyed.

d. The reasonable value of medical care and supplies that Plaintiff reasonably needed and actually received as well as the present value of the care and supplies that she is reasonably certain to need and receive in the future.

Case 2:19-cv-01008-LA   Filed 08/07/23   Page 39 of 53   Document 266

e.   The wages, salary, profits, earning capacity that Plaintiff has lost and the present value of the wages, salary, profits, earning capacity that Plaintiff is reasonably certain to lose in the future because of his inability/diminished ability to work.

When I say "present value," I mean the sum of money needed now which, together with what that sum may reasonably be expected to earn in the future, will equal the amounts of those monetary losses at the times in the future when they will be sustained.

If you return a verdict for Plaintiff, but Plaintiff has failed to prove compensatory damages, then you must award nominal damages of $1.00.

Instruction 7.26
Federal Civil Jury Instructions of the Seventh Circuit (2017 rev.)

## DAMAGES: PUNITIVE

If you find for Plaintiff(s), you may, but are not required to, assess punitive damages against Defendants. The purposes of punitive damages are to punish a defendant for his or her conduct and to serve as an example or warning to Defendants and others not to engage in similar conduct in the future.

Plaintiffs must prove by a preponderance of the evidence that punitive damages should be assessed against Defendant(s). You may assess punitive damages only if you find that her conduct was malicious or in reckless disregard of Plaintiffs' rights. Conduct is malicious if it is accompanied by ill will or spite, or is done for the purpose of injuring Plaintiffs. Conduct is in reckless disregard of Plaintiffs' rights if, under the circumstances, Defendant(s) simply did not care about Plaintiffs' safety or rights.

If you find that punitive damages are appropriate, then you must use sound reason in setting the amount of those damages. Punitive damages, if any, should be in an amount sufficient to fulfill the purposes that I have described to you, but should not reflect bias, prejudice, or sympathy toward any party. In determining the amount of any punitive damages, you should consider the following factors:

- the reprehensibility of Defendant's conduct;

- the impact of Defendant's conduct on Plaintiff;

- the relationship between Plaintiff and Defendant;

- the likelihood that Defendant would repeat the conduct if an award of punitive damages is not made;

- and –

- the relationship of any award of punitive damages to the amount of actual harm the Plaintiff suffered.

Instruction 7.28
Federal Civil Jury Instructions of the Seventh Circuit (2017 rev.)

Case 2:19-cv-01008-LA   Filed 08/07/23   Page 42 of 53   Document 266

## WISCONSIN MEDICAL NEGLIGENCE

In (treating) (diagnosing) (plaintiff)'s (injuries) (condition), (doctor) was required to use the degree of care, skill, and judgment which reasonable (doctors who are in general practice) (specialists who practice the specialty which (doctor) practices) would exercise in the same or similar circumstances, having due regard for the state of medical science at the time (plaintiff) was (treated) (diagnosed). A doctor who fails to conform to this standard is negligent. The burden is on (plaintiff) to prove that (doctor) was negligent.

A doctor is not negligent, however, for failing to use the highest degree of care, skill, and judgment or solely because a bad result may have followed (his) (her) (care and treatment) (surgical procedure) (diagnosis). The standard you must apply in determining if (doctor) was negligent is whether (doctor) failed to use the degree of care, skill, and judgment that reasonable (general practitioners) (specialists) would exercise given the state of medical knowledge at the time of the (treatment) (diagnosis) in issue.

[**Use this paragraph only if there is evidence of two or more alternative methods of treatment or diagnosis recognized as reasonable**: If you find from the evidence that more than one method of (treatment for) (diagnosing) (plaintiff)'s (injuries) (condition) was recognized as reasonable given the state of medical knowledge at that time, then (doctor) was at liberty to select any of the recognized methods. (Doctor) was not negligent because (he) (she) chose to use one of these recognized (treatment) (diagnostic) methods rather than another recognized method if (he) (she) used reasonable care, skill, and judgment in administering the method.]

You have heard testimony during this trial from doctors who have testified as expert witnesses. The reason for this is because the degree of care, skill, and judgment that a reasonable doctor would exercise is not a matter within the common knowledge of laypersons. This standard is within the special knowledge of experts in the field of medicine and can only be established by the testimony of

Case 2:19-cv-01008-LA   Filed 08/07/23   Page 43 of 53   Document 266

experts. You, therefore, may not speculate or guess what the standard of care, skill, and judgment is in deciding this case but rather must attempt to determine it from the expert testimony that you heard during this trial. In determining the weight to be given an opinion, you should consider the qualifications and credibility of the expert and whether reasons for the opinion are based on facts in the case. You are not bound by any expert's opinion.

**(Insert the appropriate cause instruction. To avoid duplication, JI-1500 should not be given if the following two bracketed paragraphs are used.)**

[The cause question asks whether there was a causal connection between negligence on the part of (<u>doctor</u>) and (<u>plaintiff</u>)'s (injury) (condition). A person's negligence is a cause of a plaintiff's (injury) (condition) if the negligence was a substantial factor in producing the present condition of the plaintiff's health. This question does not ask about "the cause" but rather "a cause." The reason for this is that there can be more than one cause of (an injury) (a condition). The negligence of one (or more) person(s) can cause (an injury) (a condition) or (an injury) (a condition) can be the result of the natural progression of (the injury) (the condition). In addition, the (injury) (condition) can be caused jointly by a person's negligence and also the natural progression of the (injury) (condition).]

[If you conclude from the evidence that the present condition of (<u>plaintiff</u>)'s health was caused jointly by (<u>doctor</u>)'s negligence and also the natural progression of (<u>plaintiff</u>)'s (injury) (condition), then you should find that the (<u>doctor</u>)'s negligence was a cause of the (<u>plaintiff</u>)'s present condition of health.]

[The evidence indicates without dispute that when (<u>plaintiff</u>) retained the services of (<u>doctor</u>) and placed (himself) (herself) under (<u>doctor</u>)'s care, (<u>plaintiff</u>) was suffering from some (disability resulting from injuries sustained in an accident) (illness or disease). (<u>Plaintiff</u>)'s then physical condition cannot be regarded by you in any way as having been caused or contributed to by any negligence on the part of (<u>doctor</u>). This question asks you to determine whether the condition of (<u>plaintiff</u>)'s health,

as it was when (plaintiff) placed (himself) (herself) under the doctor's care, has been aggravated or further impaired as a natural result of the negligence of (doctor)'s (treatment) (diagnosis).]

**(Insert appropriate damage instructions.)**

[(Plaintiff) sustained injuries before the (treatment) (diagnosis) by (doctor). Such injuries have caused (and could in the future cause) (plaintiff) to endure pain and suffering and incur some disability. In answering these questions on damages, you will entirely exclude from your consideration all damages which resulted from the original injury; you will consider only the damages (plaintiff) sustained as a result of the (treatment) (diagnosis) of by (doctor).]

[It will, therefore, be necessary for you to distinguish and separate, first, the natural results in damages that flow from (plaintiff)'s original (illness) (injuries) and, second, those that flow from (doctor)'s (treatment) (diagnosis) and allow (plaintiff) only the damages that naturally resulted from the (treatment) (diagnosis) by (doctor).]

Wisconsin Standard Civil Jury Instruction 1023

**COMPARATIVE NEGLIGENCE: PLAINTIFF AND ONE OR MORE DEFENDANTS**

      If, by your previous answers, you are required to answer this question, you will determine how much and to what extent each party is to blame for causing the (injury) (damage) (accident). You will decide the percentage (a portion of 100%) attributable to each party in causing the (injury) (damage) (accident).

      The burden of proof on these subdivisions is on the party who asserts the percentage of causal negligence attributable to the other, and that party must satisfy you by the greater weight of the credible evidence, to a reasonable certainty, what your answer should be.

Wisconsin Standard Civil Jury Instruction 1580

# CLOSING INSTRUCTIONS

Now, members of the jury, this case is ready to be submitted to you for your serious deliberation. You are free to deliberate in any way you wish consistent with your oath as jurors, but these suggestions may help you proceed in a smooth and timely way.

I would remind you to follow the instructions about the law. Respect each other's opinions and value the different viewpoints you each bring to the case. Listen to one another and be respectful of each other's opinions. Do not be afraid to change your opinion if you are convinced by the reasoning of your fellow jurors. Be thoughtful and do not rush. The parties to this case deserve your complete attention and consideration.

**Selecting the Presiding Juror**

When you retire to the jury room, select one of your members to preside over your deliberations. That person's vote is entitled to no greater weight than the vote of any other juror. The presiding juror should:

- Encourage discussions that include all jurors.

- Keep the deliberations focused on the evidence and the law.

- Let the court know when there are any questions or problems.

- Tell the court when a verdict has been reached.

**Discussing the Evidence and the Law**

I will send written copies of the instructions to the jury room for you to refer to during deliberations. It is a violation of the juror's oath not to follow the instructions, to refuse to deliberate, or to rely on any information outside of the evidence.

I remind you that you may not bring into the jury room any research materials or additional information; this includes dictionaries, computers, electronic communication devices, or other

47

reference materials. You may not communicate in any way with anyone other than jurors until you have reached your verdict.

### Getting Assistance from the Court

You will not have a copy of a written transcript of the trial testimony available for use during your deliberations. You must rely primarily on your memory of the evidence and testimony introduced during the trial. You may ask to have specific portions of the testimony read to you, but you may not receive everything you ask for or you may receive more than you ask for.

[If you wish to see an exhibit, you may ask for it. I will respond by either sending the exhibit to you or by sending back a note that I cannot send you that particular exhibit. If I do not send you the exhibit, do not concern yourselves about the reason why I have not done so.]

If you need to communicate with me while you are deliberating, send a note through the bailiff, signed by the presiding juror. To have a complete record of this trial, it is important that you not communicate with me except by a written note.

If you have questions, I will talk with the attorneys before I answer so it may take some time. You should continue your deliberations while you wait for my answer. I will answer any questions in writing or orally here in open court.

Do not reveal to me or anyone else how the vote stands on the issues in this case unless I ask you to do so.

### Reaching a Verdict

Agreement by five or more jurors is sufficient to become the verdict of the jury. Jurors have a duty to consult with one another and deliberate for the purpose of reaching agreement. If you can do so consistently with your duty as a juror, at least the same five jurors should agree in all the answers. I ask you to be unanimous if you can.

At the bottom of the verdict, you will find a place provided where dissenting jurors, if there be any, will sign their names and state the answer or answers with which they do not agree. Either the blank lines or the space below them may be used for that purpose.

After you have reached a verdict, the following steps will be followed:

- The presiding juror tells the bailiff that a verdict has been reached.

- The judge calls everyone, including you, back into the courtroom.

- The verdict is read into the record in open court.

- I may ask for an individual poll of each of you to see if you agree with the verdict. You need only answer "yes" or "no" to the question.

Members of the jury, you will consider the case fairly, honestly, impartially, and in the light of reason and common sense. Give each question in the verdict your careful and conscientious consideration. In answering each question, free your minds of all feelings of sympathy, bias, or prejudice. Let your verdict speak the truth, whatever the truth may be.

The clerk may now swear the bailiffs.

Plaintiffs' Special Jury Instruction #2
Based upon Wisconsin Standard Civil Jury Instruction 191

49

### iii. Proposed special verdict form

Plaintiffs reserve the right to revisit any issues associated with the verdict form at the close evidence. Set forth below is the Plaintiffs' proposed special verdict form:

We, the jury, duly impaneled and sworn, for our special verdict in the above-entitled action find as follows:

**QUESTION NO. 1:** Did defendants fail to take reasonable measures to provide Jennifer Jawson medical care in violation of her constitutional rights in December of 2016?

Dr. Karen Horton: _____ (Yes or No)

Jackie Pitterle: _____ (Yes or No)

Katherine Meine: _____ (Yes or No)

If you answered "Yes" to any defendant in Question No. 1, answer Question No. 2. Otherwise, proceed to Question No. 5.

**QUESTION NO. 2:** What sum of money, if any, will fairly and reasonably compensate Jennifer Jawson for any harm caused by the defendant(s) for whom you answered "Yes" in Question No. 1?

Dr. Karen Horton: $_____

Jackie Pitterle: $_____

Katherine Meine: $_____

Regardless of how you answered Question No. 2, answer Question No. 3, but only with respect to the defendant(s) for whom you answered "Yes" in Question No. 1.

**QUESTION NO. 3:** Is Jennifer Jawson entitled to recover punitive damages from the defendants?

Dr. Karen Horton: _____ (Yes or No)

Jackie Pitterle: _____ (Yes or No)

Katherine Meine: _____ (Yes or No)

If you answered "Yes" to any defendant in Question No. 3, answer Question No. 4. Otherwise, proceed to Question No. 5.

**QUESTION NO. 4:** What amount of punitive damages is Jennifer Jawson entitled to recover from the defendant(s) for whom you answered "Yes" to Question No. 3?

Dr. Karen Horton: $_____

Jackie Pitterle: $_____

Katherine Meine: $_____

**QUESTION NO. 5:** In providing medical care to Jennifer Jawson and the Estate of Jennifer Jawson's unborn Child, was Dr. Horton negligent?

ANSWER: _____ (Yes or No)

If you answered "Yes" to Question No. 5, answer Question No. 6. Otherwise Stop.

**QUESTION NO. 6:** What sum of money, if any, will fairly and reasonably compensate the Estate of Jennifer Jawson's unborn child and Jennifer Jawson for any harm caused by Dr. Horton?

ANSWER: $_____

**END OF SPECIAL VERDICT FORM**

H. **Motions in Limine.**

Set forth below are the Plaintiffs' Motions *in limine.*. The Motions have been numbered to utilize one sequential numbering system.

**MOTION IN LIMINIE #1 - TO EXCLUDE EVIDENCE, ARGUMENT AND OPINIONS REGARDING COMPARATIVE NEGLIGENCE REGARDING PLAINTIFF'S CONSTITUTIONAL CLAIMS**

**MOTION IN LIMINIE #2 - REFERENCES TO JAWSON'S PREVIOUS DRUG USE IS INADMISSIBLE**

**MOTION IN LIMINIE #3 - PRECLUDING THE ADMISSION OF EVIDENCE AND ARGUMENT REGARDING JAWSON'S PRIOR ARREST AND BAD ACTS**

**MOTION IN LIMINIE #4 - PRECLUDING THE INTRODUCTION OF PHYSICAL EVIDENCE OR TESTIMONY NOT PREVIOUSLY DISCLOSED.**

**MOTION IN LIMINE #5 – PRECLULDING ARGUMENT THAT BY PROVIDING JAWSON WITH SOME MEDICATION, THE DEFENDANTS DID NOT VIOLATE HER CONSTITUTIONAL RIGHTS**

**Supplemental Motion in limine**

**MOTION IN LIMINE # 6 - PRECLUDING JAWSON'S FAMILY MEDICAL HISTORY**

Respectfully Submitted on this 7th day of August, 2023,

s/ James J. Gende II
James J. Gende II
**GENDE LAW OFFICE, S.C.**
WI State Bar No. 1030921
N28W23000 Roundy Dr. Ste. 200
Pewaukee, WI 53072
Telephone:      (262) 970-8500
Facsimile:      (262) 970-7100
email: jgende@jamesgendelaw.com

*Attorney for Plaintiffs*

s/ Christopher P. Katers
Christopher P. Katers
**KATERS & GRANITZ, LLC**
WI State Bar No. 1067557

Kevin G. Raasch
WI State Bar No. 1100196
8112 W. Bluemound Rd. Ste. 101
Wauwatosa, WI 53213
Telephone:    (414) 600-0115
Facsimile:    (414) 600-9551
email: ckaters@katersgranitz.com

*Attorney for Plaintiffs*