UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

THE ESTATE OF THE UNBORN CHILD OF
JENNIFER JAWSON and JENNIFER JAWSON,

    Plaintiffs,

v.

                                                      Case No. 19-CV-1008

ARMOR CORRECTIONAL, et al,

    Defendants.

## PLAINTIFFS' OPPOSITION TO THE COMBINED DEFENDANTS' MOTIONS TO EXCLUDE PHOTOGRAPHS

NOW COMES the Plaintiffs, The Estate of the Unborn Child of Jennifer Jawson ("The Estate") and Jennifer Jawson ("Jawson") by and through their attorneys, Katers & Granitz, LLC, and submit the following response to Injured Patients and Families Compensation Fund's and Defendant Horton's ("Defendants") Motions to Exclude Photographs:

Defendants move to exclude the introduction of photographs depicting the post-stillborn baby ("Lamar"). Plaintiffs intend to use these images as demonstrative exhibits. These photos were taken at the hospital after Lamar's fetal demise and induced birth. These photos were produced during Jawson's deposition. Defendants seek to exclude under FRE 401, 402 and 403. Yet, these photographs are directly related to the damages in this matter, the suffering of Lamar due to withdrawals, the pain and suffering and mental anguish suffered by Jawson during Lamar's birth due to the fact he was still born, and the loss of consortium between mother and child.

Defendants fail to sustain their burden to preclude admission of Lamar's photographs based on grounds of relevance and unfair prejudice. Their arguments are unpersuasive. Post-death photographs are relevant to damages because they depict the severity of Lamar's condition, represent

the best demonstrative evidence of the damage done to Lamar in utero and go directly to the plaintiffs' loss of society and companionship claim. This Court should apply the same reasoning set forth *Heimlicher v. O. Steele, M.D.,* 615 F. Supp.2d 884 (N.D.I.A., May 14, 2009), to allow these photographs into evidence:

> Obviously, photographs of a stillborn child could have an emotional impact on almost anyone, including persons sitting on a jury. All evidence concerning the loss of a child is likely to be emotional. However, this is precisely what this case is about – the plaintiffs' loss of companionship and society with their deceased child. The fact that the subject matter of a case is tragic does not mean that a plaintiff is not entitled to present relevant evidence to prove his or her claim.

Here, the pictures are highly probative of the damage done to Lamar and are directly relevant to "the plaintiffs' loss of companionship and society" with her deceased child.

The Seventh Circuit has held that similar emotional and graphic photographs were "highly probative" and "highly relevant" and that such probative value was not substantially outweighed by any danger of unfair prejudice. *Haley v. Gross*, 86 F.3d 630, 645-46 (7th Cir. 1996). In *Haley*, the Court examined the admissibility of a photograph depicting a burned jail cell which included the charred body of a deceased (non-plaintiff) inmate in the context of Eight Amendment and 42 U.S.C. §1983 claims. *Id*. The Court found that the photograph was "highly probative, in that it indicated the severity of the fire and intensity of the damage and showed an area that (other photographs) did not." *Id*. The Court held, "While the photograph is certainly disturbing, its contents were highly relevant; and its very significant probative value was not outweighed by any danger of unfair prejudice." *Id*. at 646. That photograph was not even of the plaintiff [unlike Lamar] and had nothing to with the plaintiff's [Ms. Jawson] loss of society and companionship. These photographs are part of series and the only ones ever taken of Lamar. These photographs represent to Ms. Jawson the physical condition Lamar was in after stillbirth, are seared into her memory and demonstrative evidence that supports her pain, suffering and loss of consortium claims.

2

The same is true in other circuits around the country. *See e.g. In re Air Crash Disaster Near New Orleans,* 767 F.2d 1151 (5th Cir.1985) (district court did not error in admitting photographs of bodies of plane crash victims with third degree burns); *U.S. v. Soundingsides*, 820 F.2d 1232, 1243 (10th Cir. 1987) (admission of gruesome autopsy photographs was not abuse of discretion as "gruesomeness alone does not make photographs inadmissible"); *Burns v. Beto*, 371 F.2d 1966, 601 (5th Cir. 1966) ("[S]o long as photographs accurately represent what they purport to depict and are logically relevant, their extreme gruesome and prejudicial character cannot make their admission in evidence amount to a denial of due process")

Appellate courts around the country have generally held that when the photographs are probative of a relevant fact, even if not necessarily a disputed one, admission of even gruesome photographs under FRE 403 is not reversible error. "Gruesomeness alone does not make photographs inadmissible." *United States v. Naranjo,* 710 F.2d 1465, 1468 (10th Cir.1983). This is also true pertaining to photographs of a fetus. *See e.g. State v. Alfieri,* 132 Ohio App.3d 69, 724 N.E.2d 477 (1998) (affirming admission into evidence of photographs of fetus); *State v. Williamson,* 919 S.W.2d 69 (Tenn.Crim.App.1995) (same).

Further, Defendants ignore the pattern Seventh Circuit jury instructions in regard to § 1983 damages, which make clear that compensatory damages include, "The physical and mental and emotional pain and suffering and normal loss of life . . . . Plaintiff's estate may seek damages for loss of life." (7th Cir. Pattern Inst. 7.26). Here, the photographs of Lamar at the time his stillbirth was induced clearly depict his condition shortly after death, the conditions he suffered while in utero and during birth, and how his physical body became deformed as result of Dr. Horton's maltreatment. The photographs also depict the results of the grave medical conditions Horton ignored while she was in charge of Jawson's care and treatment at the Milwaukee County Jail. The same goes directly to the Estate's damages.

3

The evidence provided by the photographs reflect the amount of physical damage done to Lamar while under Dr. Horton's care, after a pregnancy that by all medical accounts reflected normal progression until he was incarcerated at the Milwaukee County Jail. This evidence is prejudicial against Dr. Horton, but not unfairly so because it truly and accurately reflects what happened to him due to her misconduct. The fact finder should have access to this evidence when considering plaintiffs' claim for damages and loss of society and companionship. Although these photographs may have an emotional impact on the jury, this case revolves around the death of fetus and these photographs depict the best evidence available of the effects of Dr. Horton's maltreatment. The test for the court to consider is whether this evidence is unfairly prejudicial, and Dr. Horton has made no showing in that regard. If the jury finds her care constituted violations of the plaintiffs' civil rights and/or that she was negligent in regard to her treatment of Ms. Jawson and Lamar, these pictures offer stark evidence of mother and unborn child's damages. Dr. Horton's care or lack thereof, according to plaintiffs' experts, was horrendous. The result to Lamar is reflected by these representative pictures taken immediately at the hospital after the birth of his dead body was induced. Precluding the jury from viewing the physical state of Lamar after birth frustrates the truth-seeking process. These photos provide an accurate depiction of how Lamar's body reacted to the deprivation of methadone, what the death process involved and what is left of him for his mother's memories of her baby. They are highly probative and support plaintiffs' damages claims.

Defendant Horton's counsel describes the photographs as "gruesome." Maybe so, but not as gruesome as the physical and mental anguish suffered by the mother giving birth to this dead baby and the effects she continues to suffer after having to observe what Dr. Horton did to her and Lamar, who was healthy prior to December 2, 2016, when Horton took over Jawson's care. A mother no longer has her baby, and a baby no longer has his life. That is truly gruesome. The limited number of photographs are not inflammatory, [there are 70 photos in total marked at Ms. Jawson's deposition]

but this small representative selection accurately depicts the tragic outcome at the heart of this civil rights case. These photographs are relevant and necessary evidence that a jury must be allowed to see. Defendants' motion must be denied.

Dated at Wauwatosa, Wisconsin this 26th day of February, 2024.

s/ Kevin G. Raasch
Kevin G. Raasch
Attorney & Counselor at Law
Katers & Granitz, LLC
8112 W. Bluemound. Suite 101
Milwaukee, WI 53213
Ph: (414) 600-0115, Fax: (414) 600-9551
Attorneys for the Plaintiffs