UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

**THE ESTATE OF THE UNBORN CHILD
OF JENNIFER JAWSON, et al.,**
    **Plaintiffs,**

  v.                                                                    Case No. 19-CV-1008

**ARMOR CORRECTIONAL HEALTH
SERVICES, et al.,**
    **Defendants.**

---

## DECISION AND ORDER

Plaintiffs Jennifer Jawson and the Estate of the Unborn Child of Jennifer Jawson commenced this lawsuit alleging violations of Jawson's constitutional rights under 42 U.S.C. § 1983 as well as state claims of negligence and wrongful death. Before me now is plaintiffs' motion for entry of a default judgment against defendant Armor Correctional Health Services, Inc. ("Armor"), pursuant to Federal Rule of Civil Procedure 55(b)(2) based on Armor's failure to appear at trial.

### I. BACKGROUND

Armor is a private corporation which, at all times relevant to plaintiffs' amended complaint, was contracted to provide medical services for the Milwaukee County Jail. Plaintiffs allege in their amended complaint that on December 2, 2016, Jawson was booked into the Jail on a probation hold. Jawson was approximately 34 weeks pregnant and was prescribed 150 mgs of methadone daily to treat opioid withdrawal symptoms. While in custody, Jawson did not receive her prescribed dose of methadone until December 7, 2016—five days after she entered the Jail. On December 9, 2016, Jawson notified medical personnel at the Jail that she had not felt her baby move since the night

before. After staff was unable to detect a fetal heartbeat, Jawson was transported to a hospital where her fetus was declared dead.

Plaintiffs filed suit against Armor, several individual Armor employees, and Milwaukee County, alleging that the failure to provide Jawson with her prescribed methadone caused her to miscarry. Plaintiffs alleged § 1983 deliberate indifference claims against the individual Armor employees, deliberate indifference claims under *Monell v. Department of Social Services*, 436 U.S. 658, 694 (1978), against Armor and Milwaukee County, as well as state law negligence and wrongful death claims against all defendants. I granted defendants' motions for summary judgment as to plaintiffs' § 1983 claims against all but two of the individual Armor employees, plaintiffs' *Monell* claims against Armor and the County, and plaintiffs' state law claims against the County. *See* ECF Nos. 217, 239. The matter was scheduled for a jury trial on plaintiffs' remaining claims against Armor and Armor employees Jackie Pitterle and Dr. Karen Horton.

In November 2023 and January 2024, Armor's counsel moved to withdraw. ECF Nos. 275, 279. Counsel indicated that Armor had directed them to withdraw based its inability to pay counsel and due to the recent filing of an Assignment for the Benefit of Creditors in Florida state court on October 11, 2023. *Id.*, *see also* ECF No. 274 (Suggestion of Assignment for the Benefit of Creditors). I granted the motions to withdraw at the final pretrial conference held on January 8, 2024. As a corporation, Armor could not—and did not attempt to—proceed without counsel. *See* General Local Rule 83(e) (E.D. Wis. 2010). Armor took no further action to appear or defend against plaintiffs' claims.

2

The matter proceeded to a jury trial. During trial, defendant Pitterle moved for a directed verdict on all of plaintiffs' claims against her. Plaintiffs did not object, and I granted the motion. After the close of plaintiffs' case, plaintiffs' counsel moved for entry of a default judgement against Armor on the remaining state law claims. As Armor failed to appear at trial or otherwise defend and no other defendant objected, I granted plaintiffs' request. Plaintiffs' § 1983 claims and state law claims against Dr. Horton proceeded to a jury, who found for Dr. Horton on all claims.

Plaintiffs move for entry of a default judgment against Armor. ECF No. 329. On Jawson's state law negligence claim, plaintiffs seek an award of $1,000,000.00 in compensatory damages and $1,000,000.00 in punitive damages. ECF No. 330, ¶ 13. On the Estate's state law wrongful death claim, plaintiffs seek $500,000.00 in compensatory damages and $1,000,000.00 in punitive damages. *Id.*, ¶ 14.

## II. DISCUSSION

The decision to enter default judgment lies within the discretion of the district court. *O'Brien v. R.J. O'Brien & Associates, Inc.*, 998 F.2d 1394, 1398 (7th Cir. 1993). Federal Rule of Civil Procedure 55 governs the entry of default judgment. There are two stages in a default proceeding: first, the establishment of the default, and second, the actual entry of a default judgment. The effect of an entry of default is that "the well-pleaded allegations of a complaint relating to liability are taken as true." *VLM Food Trading Int'l, Inc. v. Ill. Trading Co.*, 811 F.3d 247, 255 (7th Cir. 2016) (citing *Dundee Cement Co. v. Howard Pipe & Concrete Prods., Inc.*, 722 F.2d 1319, 1323 (7th Cir. 1983)). After entry of default, the defaulting party cannot contest the fact of liability unless the entry of default is vacated under Rule 55(c). *Id.*

3

Once default is established, a plaintiff still must establish entitlement to the relief sought. *In re Catt*, 368 F.3d 789, 793 (7th Cir. 2004). If the plaintiff's claim is for a sum certain or a sum that can be made certain by computation, the clerk may enter judgment for that amount against a defendant who has been defaulted for not appearing. Fed. R. Civ. P. 55(b)(1). In all other cases, the plaintiff must apply to the court for a default judgment. Fed. R. Civ. P. 55(b)(2). In considering a motion for default judgment under Rule 55(b)(2), I must conduct an inquiry in order to ascertain the amount of damages "with reasonable certainty." *In re Catt*, 368 F.3d at 793.

A. **Default Judgment—Liability**

By virtue of its default, Armor has admitted to the well-pleaded allegations of liability in plaintiffs' amended complaint. Plaintiffs allege that by accepting Jawson into custody, Armor "undertook and owed to Jawson and her unborn child the duty to make reasonable efforts to care for them in a reasonably prudent manner, to exercise due care and caution and to follow the common law as it relates to persons in their custody who are unable to care for themselves or seek medical attention while in custody," and that notwithstanding the aforementioned duties, Armor "treated Jawson and her unborn child in a manner that was extremely negligent, careless, reckless, and without concern for her safety." ECF No. 61, ¶¶ 165–166. Plaintiffs further allege that the death of Jawson's unborn child was "caused by [Armor's] wrongful acts, negligence, and/or improper conduct." *Id.*, ¶ 172.

Armor has not responded to plaintiffs' motion, nor has it moved to set aside its default under Rule 55(c). Milwaukee County, however, filed a response in opposition to

4

Case 2:19-cv-01008-LA   Filed 03/28/25   Page 4 of 11   Document 336

plaintiffs' motion for entry of a default judgement. ECF No. 334.[1] The County argues that it would be logically inconsistent for a default judgment to be entered against Armor when the jury found that Dr. Horton was not negligent. The County cites *Frow v. De La Vega*, 82 U.S. 552 (1872), which stands for the proposition that defendants sued jointly may not be subjected to inconsistent judgments. However, the Seventh Circuit has limited the broad rule of *Frow*, explaining that "when different results as to the different parties are not logically inconsistent or contradictory, the rationale for the *Frow* rule is lacking." *In re Uranium Antitrust Litigation*, 617 F.2d 1248, 1257–58 (7th Cir. 1980). Where plaintiffs have alleged joint and several liability, not merely joint liability, an entry of a default judgment against one defendant but not another is not precluded unless the judgments against the two defendants are necessarily inconsistent with one another. *Id.*; *see also Arwa Chiropractic, P.C. v. Med-Care Diabetic & Med. Supplies, Inc.*, 961 F.3d 942, 950–51 (7th Cir. 2020).

Here, plaintiffs sued the defendants both jointly and severally. The County, however, asserts that where a claim is based on vicarious liability—as is the case with plaintiffs' state law claims against Armor—a finding of liability as to Armor is inconsistent with a finding of no liability as to Dr. Horton. The County is incorrect. Instructive here is the Seventh Circuit's decision in *Douglas v. Metro Rental Services, Inc.*, 827 F.2d 252 (7th Cir. 1987). The plaintiffs in *Douglas* alleged that the defendants refused to rent them

---

[1] Plaintiffs assert in reply that the County lacks standing to oppose entry of a default judgment. *See* ECF No. 335. This may be the case, as the County has been dismissed from this action and does not purport to appear on Armor's behalf. However, because I find the County's argument to be without merit, I will not consider the issue of whether the County has standing to oppose entry of a default judgment against Armor.

an apartment because of their race, in violation of the Fair Housing Act and the Civil Rights Act of 1866. 827 F.2d at 253. After default was entered against defendant Metro Rental Services, Inc., the magistrate entered a default judgment against Metro in the amount of $115,000, notwithstanding a jury verdict in favor the other defendant, Stephen Wolf, who served as president of Metro at all times relevant to the plaintiffs' case. *Id.* at 254. On appeal, Metro argued that the default judgment against it should be vacated because defendant Wolf, who actually interacted with the plaintiffs during the rental application process, prevailed with the jury. *Id.*

Metro noted that as a corporation, it could act only through its agents, and none of its agents were found responsible for discrimination by the jury. *Id.* at 255. But considering *Frow* and *Uranium Antitrust*, the Seventh Circuit concluded the two results were not necessarily inconsistent:

> One can speculate as to how the supposed inconsistency between the two judgments might be explained. It may be that Lester, the first Metro employee to meet plaintiffs, was the one who instigated the discrimination, or that Metro had a policy of racial discrimination set by its board of directors, or that other employees were involved. We cannot be sure, but Metro caused these problems by defaulting, and cannot now take advantage of the judgment in favor of its president.

*Id*. Under these circumstances, the court concluded that the differing judgments against the corporation and its agent were not logically inconsistent.

Here, as in *Douglas*, one can speculate that there may have been other employees of Armor besides Dr. Horton and Pitterle whose negligence may have caused the plaintiffs' injuries. Plaintiffs named several additional employees in the amended complaint. I note that neither Armor nor the individual Armor defendants ever moved for summary judgment on plaintiffs' state law negligence and wrongful death claims against

6

them. *See* ECF Nos. 187, 188 (Armor Defendants' motion for summary judgment and brief in support). Accordingly, judgment was never entered on these claims against many of the individual employees. While it is unclear why plaintiffs chose not to proceed on these claims, they are at this point abandoned, and thus resulted in no judgments that would be inconsistent with a default judgment against Armor. Armor has "caused these problems by defaulting, and cannot now take advantage of the judgment in favor of" one of its employees. *Douglas*, 827 F.2d at 256. Because a default judgment against Armor would not be necessarily inconsistent with the jury's finding that Dr. Horton was not negligent or the directed verdict in favor of Pitterle, *Frow* does not preclude entry of a default judgment against Armor.

**B.    Default Judgment—Damages**

Although Armor's default results in an admission of liability, plaintiffs must still prove up damages and show that the relief requested is appropriate. *Domanus v. Lewicki*, 742 F.3d 290, 303 (7th Cir. 2014). Allegations in the amended complaint relating to liability are taken as true, but allegations going to damages are not. *Id.* As such, plaintiffs must present evidence proving entitlement to the relief sought. Plaintiffs rely on the record established at trial, specifically Jawson's testimony as to her injuries. As previously stated, Armor has not responded to plaintiffs' motion, presented evidence in response, or opposed the amount of damages sought by plaintiffs.

**1.    Negligence Claim**

Plaintiffs seek $1,000,000.00 in compensatory damages on Jawson's negligence claim for past physical and emotion pain and suffering sustained as well as her expected future emotional pain and suffering. Under Wisconsin law, a plaintiff may recover

7

compensatory damages that "reasonably compensate" for the injuries sustained and for the injuries that the plaintiff is reasonably certain to sustain in the future. Wis. JI—Civil 1768 (1998). A plaintiff need not show damages with exact or mathematical precision, but guesswork or speculation is not enough to meet the burden of proof on damages. Wis. JI—Civil 1700 (2016).

At trial, Jawson testified to the injuries she sustained. She testified to the fear she felt when on she could no longer feel her baby move, explaining how her fear turned to panic when medical staff at the Jail could not detect a fetal heartbeat. Jawson testified that she was afraid to go to the hospital alone and had asked Dr. Horton to come with her, but Dr. Horton told Jawson that she could not. Jawson testified to the shock and distress she felt when hospital staff notified her that baby was deceased. Jawson explained that she after she was released, she had to go her obstetrician to be induced. She testified as to the pain and trauma she suffered during labor, noting that the delivery was significantly more painful than her labor delivering her other children. Jawson testified that she saw her baby after he was delivered. Images of Jawson's stillborn baby were admitted into evidence as plaintiffs' exhibits 53, 54, and 55, which show that the fetus born with discolored and peeling skin and soft tissue. Jawson testified that seeing her baby like this was traumatic, and that this is how she still remembers her son when she thinks about him. Jawson further testified to the grief and depression she experienced after the fact, stating that she struggled to get out of bed for approximately one year after. Jawson testified that she has not gotten over her grief and intends to seek counseling.

I note that determination of damages for pain and suffering is difficult, as pain and suffering is inherently subjective and there is no exact standard for calculation. After

carefully considering the evidence in the record, I find that an award of $250,000.00 will reasonably compensate Jawson for the pain and suffering she sustained and is reasonably certain to sustain in the future. In arriving at this award, I considered the evidence of the significant physical pain Jawson suffered during labor delivering her stillborn child. That physical pain, however, appears to have been limited to the duration of her labor. I also considered the scale of Jawson's emotional suffering, which she testified has continued years later.

Plaintiffs also seek $1,000,000.00 in punitive damages on Jawson's negligence claim. Punitive damages may be awarded only if the defendant acted maliciously toward the plaintiff or in an intentional disregard of the rights of the plaintiff. Wis. JI—Civil 1701.1 (2018). A person acts with "intentional disregard of the rights of the plaintiff" if the person acts with the purpose to disregard the plaintiff's rights or is aware that the acts are substantially certain to result in the plaintiff's rights being disregarded, meaning the conduct must be: (1) deliberate, (2) an actual disregard of the plaintiff's right to safety, health, or life, a property right, or some other right, and (3) sufficiently aggravated to warrant punishment by punitive damages. *Id.*

Although by virtue of its default Armor has admitted that its conduct was "willful," *see* ECF No. 61, ¶ 170, there is no evidence in the record of exactly what this "willful" conduct entailed, and why such conduct was sufficiently aggravated to warrant punishment by punitive damages. The purpose of punitive damages is to punish a wrongdoer or deter the wrongdoer and others from engaging in similar conduct in the future. But an award of punitive damages here would not achieve this purpose when there

9

Case 2:19-cv-01008-LA    Filed 03/28/25    Page 9 of 11    Document 336

is no evidence of exactly what willful conduct occurred in this case. I therefore decline to award Jawson punitive damages on her negligence claim.

### 2. Wrongful Death Claim

Plaintiffs seek $500,000.00 in compensatory damages on the Estate's wrongful death claim. Under Wisconsin law, for the loss of a child a parent may recover compensatory damages that will reasonably compensate for the loss of society and companionship sustained since the death of the child and the amount that she is reasonably certain to sustain in the future. Wis. JI—Civil 1895 (2019). "Society and companionship" includes the love, affection, care, and protection the parent would have received from her child had he continued to live. *Id.* In determining a parent's loss of society and companionship, I consider the age of the deceased child and the parent, the past relationship between the child and the parent, the love, affection, and conduct of each toward the other, the society and companionship given to the parent by the child, and the personality, disposition, and character of the child. *Id.*

I again note the difficulty of determining this sort of damages, as the value of love, affection, care, and protection a parent would have received from a child had he continued to live is subjective. I further note that these damages are made harder to calculate because the child was not yet born, making consideration of the personality, disposition, and character of the child impossible. At trial, Jawson testified that she had chosen the name "Lamar" for the child that she never got to have a relationship with. She testified that her child would have been eight years old at the time of trial had he lived. Jawson further testified to the relationship she had with her other children. Considering the evidence in the record, I find that an award of $100,000.00 will reasonably compensate

10

the Estate for the loss of society and companionship of the unborn child of Jennifer Jawson.

Plaintiffs further seek $1,000,000.00 in punitive damages on the Estate's state law wrongful death claim. I first note that punitive damages are not recoverable in a wrongful death action under Wisconsin Statute § 895.03. *See Wangen v. Ford Motor Co.*, 294 N.W.2d 437, 465 (Wis. 1980). Additionally, because a wrongful death claim under § 895.03 is derivative of the underlying negligence claim, I find that punitive damages are not warranted for the same reasons explained above.

### III. CONCLUSION

For the reasons stated above **IT IS ORDERED** that plaintiff's motion for entry of default judgment (ECF No. 329) is **GRANTED in part**. The clerk of court shall amend[2] the judgment to reflect a default judgment in favor of plaintiffs against defendant Armor Correctional Healthcare Services, Inc., in the amount of $350,000.00.

Dated at Milwaukee, Wisconsin, this 28th day of March, 2025.

/s/ Lynn Adelman
LYNN ADELMAN
United States District Judge

---

[2] After trial, judgment was entered in favor of all defendants. ECF No. 328. Entry of final judgment at that time was a result of oversight and premature given plaintiffs' oral motion for entry of a default judgment against Armor made during trial. Accordingly, pursuant to Federal Rule of Civil Procedure 60(a), I will amend the judgment to reflect the default judgment in favor of plaintiffs against Armor.